*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0287p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5393

CRAIG D. BRANCH,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 03-00067—John G. Heyburn II, Chief District Judge.

Argued: April 24, 2008

Decided and Filed: August 12, 2008

Before: SUHRHEINRICH, CLAY, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. J. Cam Barker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. J. Cam Barker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Terry M. Cushing, Amy M. Sullivan, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. Craig Branch ("Branch") entered a conditional guilty plea to one charge of possessing with the intent to distribute an amount of cocaine in excess of 500 grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II); the plea agreement preserved his right to appeal the district court's denial of pretrial motions, which he now appeals. Branch also appeals his sentence. For the reasons that follow, we **AFFIRM** Branch's conviction and sentence.

## I. Background

Officer Jerry Colston ("Colston") is a police officer of the Oldham County, Kentucky Police Department. On the evening of March 5, 2003, Colston stopped at a Thorntons Mini-Mart off Interstate Highway 71 in Oldham County, Kentucky. While taking a break there, he observed two men, Branch and Christopher Patterson ("Patterson"), who both seemed to actively avoid him.

1

Colston followed the two men as they drove north on I-71. After observing their car exceed the speed limit and weave out of its lane, Colston pulled the car over.

Colston approached the car and requested Branch's insurance and vehicle registration. Branch responded that he did not have either document because he had rented the car, but handed Colston his driver's license and the rental agreement. Colston examined the rental agreement and noticed that the car was overdue by several weeks. Colston requested Patterson's driver's license, and noticed that although Branch and Patterson claimed to be from New York, their driver's licenses were from Tennessee and Florida, respectively. Back at the patrol car, Colston wrote Branch a warning citation for the speeding offense, ran radio checks on the car and its occupants, and called for security backup. Colston returned to the stopped car and asked Branch to step out. As Branch stepped outside, Colston noticed that Branch's level of nervousness "just shot through the ceiling all of a sudden." Colston handed Branch the warning citation, and returned the driver's license and rental documents.

Colston told Branch that he was free to leave, but asked if he would mind staying to answer a few more questions. Branch agreed, and, in response to Colston's question as to why he and Patterson were together that evening, stated he had flown from New York to Memphis to attend a party, and that Patterson had agreed to return with him to New York. Branch acknowledged that he did not know Patterson well and knew nothing about the rental car.

Colston requested consent from Patterson to search the car, which was rented in Patterson's name. Patterson gave his consent. Colston brought his drug-detection dog over to the car, and it became excited and signaled its alert to the scent of narcotics at several places on the car. Colston proceeded to search the car by hand and discovered a small canvas bag containing slightly less than ten thousand dollars in cash.

At this point, Colston and Officer Campbell, the backup officer, patted down Branch and Patterson for weapons. Colston felt a "large unusual hard object" around Branch's waistband. Branch said it was cocaine. Colston handcuffed Branch and retrieved a kilo brick of cocaine from Branch's waistband. After being *Mirandized*, Branch admitted that he had been transporting the cocaine for sale.

A video recorder in Colston's patrol car had automatically recorded the entire encounter. However, when Colston reviewed the tape, he discovered that the microphone unit had not been working, and that there was no audio track on the tape. With the belief that the tape had no evidentiary value, Colston sent the tape back to the police department's clerk's office for erasure.

Branch was indicted on one count of possessing with the intent to distribute an amount of cocaine in excess of 500 grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II). Branch filed a motion to suppress the narcotics evidence, and the magistrate judge held an evidentiary hearing, issued a report finding facts, and concluded that the seizure of cocaine was constitutional. The magistrate's report provided notice to Branch that if he did not file objections to the report within ten days of service, he would waive the right to appeal the district court's adoption of the magistrate's findings and conclusions. Branch did not file objections to the report, and on September 9, 2005, the district court adopted the magistrate judge's findings of fact and conclusions of law, and denied Branch's motion to suppress the narcotics evidence.

Branch also filed a motion to dismiss for government misconduct based on Colston's destruction of the videotape. After an evidentiary hearing, the district court found that Colston had not acted in bad faith in failing to preserve the videotape and denied the motion.

Thereafter, Branch entered a conditional guilty plea to the charge, preserving his right to appeal the denial of the pretrial motions.

Branch's presentence report ("PSR") attributed two criminal history points for two prior convictions: one point for a 1996 conviction for possession of marijuana, and one point for a 2004 conviction for conspiracy to possess and distribute marijuana.[1]

During the sentencing proceedings on February 16, 2006, the district court expressed a desire to sentence Branch below the statutory mandatory minimum. The district court observed that Branch had been on bond for three years, maintained a full-time job, and provided for his family. The court observed that Branch would be eligible for relief under the safety-valve exception to the statutory mandatory minimum sentence, 18 U.S.C. § 3553(f), if Branch had no more than one criminal history point. *See* § 3553(f)(1) (requiring that a defendant have no more than one criminal history point for safety-valve eligibility).

The district court stated its belief that the number of criminal history points recommended by the PSR "completely misrepresent[ed]" Branch's criminal history. The district court concluded that Branch's 1996 conviction for possession of marijuana was "so insignificant that it could not . . . possibly rise to a level where it would be a criminal history point." The district court held that Branch's criminal history warranted only one criminal history point, and accordingly found Branch eligible for relief under the safety-valve. Finding a low likelihood of recidivism, the district court sentenced Branch to five years' probation and issued a $100 special assessment.

On February 23, 2006, the Government filed a motion to correct the sentence under Fed. R. Crim. P. 35(a). The Government argued that the district court misapplied the safety-valve provision, and that Branch should have received the statutory mandatory minimum sentence. The Government contended that Branch was ineligible to qualify for safety-valve relief because he had too many criminal history points, and the district court's finding to the contrary was clearly erroneous in light of this Court's holding in *United States v. Penn*, 282 F.3d 879 (6th Cir. 2002).

On February 28, 2008, without a hearing, the district court entered a new order, finding that it had made a "clear error" in sentencing Branch below the statutory mandatory minimum, because it lacked authority to lower a defendant's criminal history score to qualify him for safety-valve relief. The district court also recognized that U.S.S.G. § 4A1.2(c) does not allow exclusion of Branch's marijuana conviction from its criminal history points computation. The district court imposed a corrected sentence of the statutory mandatory minimum sentence of five years' imprisonment, followed by four years' supervised release, and a $100 special assessment. At the same time, the district court stood "by its logic and findings of fact" and its belief that "its sentence [was] reasonable for all the reasons previously stated on the record."

## II. Analysis

On appeal Branch argues that the district court erred in: (1) denying his motion to suppress; (2) denying his motion to dismiss for violation of his due process rights; and (3) changing his sentence under Fed. R. Crim. P. 35(a).

## A. Motion to Suppress

Branch has forfeited his right to appeal the district court's denial of his suppression motion by failing to object to the magistrate judge's report and recommendation. The report clearly indicated that Branch had ten days to file an objection or waive further appeal. As the district court noted, Branch did not do so. The law in this Circuit is clear on this point. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985)

---

[1]The PSR also attributed two criminal history points for committing the present offense while on probation, but the parties later agreed that those points were not warranted.

(holding that this Court's waiver rule is within its supervisory powers); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).[2]

Branch's challenge is without merit in any event, even if we reviewed it de novo. In reviewing a district court's denial of a motion to suppress, we review the factual findings for clear error and the legal conclusions de novo. *United States v. Graham*, 483 F.3d 431, 435 (6th Cir. 2007). "With regard to *Terry*-stop analysis in particular, although the standard of review on the ultimate reasonable suspicion inquiry is de novo, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination." *Id.* (internal quotation marks and citation omitted). Thus, "due weight" is given to the inference drawn by the district court. *Id.*

Branch's argument has three facets. First, Branch contends that Colston detained him without reasonable suspicion after he issued the warning ticket, pointing to Colston's testimony that he had decided to detain Branch for further investigation. Branch relies on *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005), which states that once the purpose of the traffic stop is completed, an officer cannot continue to detain the vehicle or its occupants unless something during the stop provides reasonable suspicion. *Id.* at 353.

In the first place, Colston's subjective motivation is not the issue. *See Whren v. United States,* 517 U.S. 806, 812-13 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc). The issue is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 446, 554 (1980). Branch does not dispute that Colston told him he was free to leave after receiving the warning ticket and his driver's license, and he does not present any argument or evidence that he was otherwise seized by Colston at that point. This Court has held that police officers do not violate the Fourth Amendment by asking an individual questions after the initial stop has ended. *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc). Because Branch was not seized within the meaning of the Fourth Amendment, Colston did not need any reasonable suspicion to ask him further questions. To the extent that Branch contends he was not free to leave before Colston delivered the warning ticket, this argument is without merit, because at that point Branch was detained pursuant to a valid *Terry* stop that lasted no more than five minutes. And Branch does not dispute that Colston lawfully stopped him for certain traffic infractions or that the five-minute delay was excessive.

Notwithstanding, Colston had reasonable suspicion of criminal activity to justify a continued detention. Before issuing the warning ticket, Colston had seen Branch and Patterson actively avoid him at the mini-mart, knew that they drove a rental car that was several weeks overdue, knew that their driver's licences did not match their claimed residences, and observed increasing nervousness. Although, as the magistrate observed in its report and recommendation adopted by the district court, none of these factors is dispositive; viewed in their totality, they create a reasonable suspicion that illegal activity was afoot. *See Illinois v. Wardlow*, 528 U.S. 119, 125-25 (2000) (noting that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *see also United States v. Hill*, 195 F.3d 258, 271 (6th Cir. 1999) (holding that the totality of the circumstances, including one of the defendant's uncontrollably shaky hands and apparent nervousness, as well as the defendants' unusual explanation of their cross-country trip, "plainly supported a reasonable suspicion of illegal activity"); *Erwin*, 155 F.3d at 822 (holding that a

---

[2]Although the law in this Circuit is well-settled with respect to waiver of appeal, we may, however, excuse the default in the interest of justice. *See Thomas*, 474 U.S. at 155 (emphasizing "that, because the [*Walters*] rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interest of justice."); *Souter v. Jones*, 395 F.3d 577, 585 (6th cir. 2005). This case, however, does not present an occasion for us to excuse the default because Branch's suppression challenge is without merit, even when reviewed *de novo*.

continued detention would be justified by the fact of the driver's nervousness and the lack of registration). *See generally United States v. Garrido*, 467 F.3d 971, 982 (6th Cir. 2006); *cf. United States v. Mesa*, 506 F.3d 488, 495-96 (1995) (holding that "[a]lthough there are a plethora of cases referring to a defendant appearing nervous, nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself" (internal quotation marks and citation omitted)).

Branch's reliance on *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002) is misplaced. In *Townsend*, this Court held that the officers lacked reasonable suspicion to justify an investigatory detention after a routine traffic stop where defendants claimed were somewhat dubious, they had three cell phones and a Bible in the car, the car was littered with food and clothing, the driver was not the registered owner of the car, and one of the defendants had previously been arrested on a weapons charge. *Id*. at 539-40. However, in that case, defendants did not actively avoid police officers. *Id*. Nor did they exhibit extraordinary nervousness that increased as the traffic stop progressed. *See id*. at 545. The car they were driving belonged to the defendant's mother and was insured by that defendant; it was not a rental car that was several weeks overdue. *Id*. And the district court in *Townsend* discredited the officers' claim that the defendants appeared nervous. *Id*. at 545. In short, unlike *Townsend*, in considering the "combination of factors considered by the officer," reasonable suspicion existed in this case. *See id*. at 542.

The patdown for weapons was also reasonable. To ensure his safety, an officer may pat down the car's driver and passenger "upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (holding that officer violated the Fourth Amendment for searching an automobile upon merely issuing a citation for speeding because concern for officer safety was minimal, but noting that a patdown is permissible upon reasonable suspicion the driver may be armed and dangerous); *see also Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005). "Because a pat-down search is for the limited purpose of ensuring the safety of the officer and others around him, the search must 'be confined in scope to an intrusion reasonably designed to discover guns . . . or other hidden instruments for the assault of the police officer.'" *United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 29 (1968)).

Here, Colston did not conduct the search until after the dog had alerted to the scent of narcotics at several places on the car and he had searched and found the nearly $10,000 in cash. *Cf. Graham*, 483 F.3d at 436 (observing that "[t]here clearly must be some nexus between the criminal conduct of which the police suspect the defendant and the aim of the protective search . . . . It is hard to imagine how suspicion of a parking violation, by itself, could ever justify a protective search of a suspect's person."). As the district court held, Colston was entitled to rely on his training and experience that drug dealers frequently carry weapons and thus the patdown was constitutionally permissible. *See United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004).

Branch also argues that Colston was not justified in seizing the bulge in his waistband because it was "clearly not a weapon." This argument is without merit. Colston testified without dispute that he was startled by a "large unusual hard object" in Branch's waistband, that he asked Branch what it was, and that Branch responded, "Man, it's cocaine, just take it." At this point, Colston had probable cause to seize the contraband.

In sum, Branch's motion to suppress was properly denied.

## B. Due Process Violation

Branch also contends that his due process rights were violated by Colston's failure to preserve the videotape. The failure to preserve material exculpatory evidence violates the

defendant's right to due process regardless of whether the government acted in bad faith. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Youngblood v. Arizona*, 488 U.S. 51, 58 (1988); *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). Constitutional materiality means that the evidence possesses both "an exculpatory value that was apparent before the evidence was destroyed and . . . [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89. If "potentially useful" evidence is not available, there is no due process violation unless the government acted in bad faith. *Youngblood*, 488 U.S. at 58. Negligence, even gross negligence, on the part of the government does not constitute bad faith. *Wright*, 260 F.3d 571. Once bad faith is shown, the defendant must also demonstrate that he cannot obtain comparable evidence by other reasonable available means. *Id.* (citing *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996.)).

On appeal, Branch argued only that the videotape constituted merely "potentially useful" exculpatory evidence, and did not argue it was material exculpatory evidence. Thus, the due process issue is whether the tape's destruction was due to Colston acting in bad faith. *See Youngblood*, 488 U.S. at 58.

Colston testified that he failed to preserve the videotape because it lacked an audio track and was therefore "flawed," and that he "recirculated it intentionally." Colston acknowledged that "it was probably a bad decision on my part," but that "[r]ight or wrong," he thought the tape had no evidentiary value so it could be recirculated.

The district court found no credible evidence that Colston acted in bad faith. We review this factual decision for clear error. *See United States v. Cody*, 498 F.3d 582, 589 (6th Cir. 2007) (district court's acceptance of officer's reason for destroying evidence was not clearly erroneous (and citations therein)). We can find none. Although recirculation of the tape may have been negligent, or even grossly negligent, as the district court found, it was not in bad faith. Therefore, the tape's recirculation did not violate Branch's right to due process. *Cf. United States v. Femia*, 9 F.3d 990, 993-94 (1st Cir. 1993) (holding that the government's destruction of tape recordings of conversations between defendant and alleged coconspirators did not violate due process, despite the government's gross negligence in failing to preserve them). In short, the district court did not err in denying Branch's motion to dismiss based on a due process violation.

### C. Safety-valve

Branch argues that the district court lacked authority to modify the previously imposed sentence under Fed. R. Crim. Proc. 35(a), because its initial determination was "not the type of inarguable error" that Rule 35(a) authorizes a district court to correct.

Fed. R. Crim. Proc. 35(a) provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." "The authority conferred by Rule 35(a) to a district court is extremely limited." *United States v. Arroyo*, 434 F.3d 835, 838 (6th Cir. 2006) (citing *United States v. Galvan-Perez*, 291 F.3d 401, 406 (6th Cir. 2002)). This limited authority extends only to "obvious error[s] or mistake[s]" that "would almost certainly result in a remand." Fed. R. Crim. P. 35, Advisory Comm. Notes, 1991 Amendments (discussing Rule 35(c), now located in Rule 35(a) pursuant to the 2002 Amendments). Furthermore, Rule 35(a) should not "be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines." *Id.*

Here, the district court corrected an "obvious error" as contemplated by the Advisory Committee Notes to Rule 35. That "obvious error" was initially finding Branch eligible to benefit from § 3553(f)'s safety-valve provision, in that way allowing him a sentence below the statutory mandatory minimum.

A defendant may be sentenced below the statutory mandatory minimum for violations of 21 U.S.C. § 841 pursuant to the safety-valve provision of § 3553(f). However, in order to be eligible for safety-valve relief, a defendant must satisfy five criteria. *See* § 3553(f)(1)-(5). The first criterion, the one relevant in this case, requires that a defendant have no "more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1); *see United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007) ("Section 3553(f), the so-called 'safety valve' provision, is not applicable if the defendant has more than one criminal history point . . . .").

Despite Branch having two prior convictions on his record, each carrying one criminal history point, the district court initially declined to count one of his prior convictions because it felt that the prior conviction for unlawful possession of marijuana was trivial. Because the district court did not count it, the district court deemed Branch eligible for safety-valve relief, and his sentence of five years' probation avoided the statutory mandatory minimum sentence of 60 months' imprisonment.

However, as the Government pointed out in its Rule 35(a) motion citing our decision in *United States v. Penn*, 282 F.3d 879, 882 (6th Cir. 2002), the district court had no authority to sentence Branch below the statutory mandatory minimum. In *Penn*, we held that a district court lacks "authority to alter [a] defendant's criminal history points based upon its conclusion that [the defendant]'s criminal history score overstated the seriousness of his past criminal conduct." *Id.* The *Penn* court explained that:

> [t]he "safety valve" provision of 18 U.S.C. § 3553(f) provides that in cases involving certain drug offenses, including violations of 21 U.S.C. § 841, the sentencing court may impose a sentence "without regard to any statutory minimum sentence," if the court determines that the five criteria listed in § 3553(f) are satisfied. The first criterion requires that "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). Section 5C1.2 of the Sentencing Guidelines interprets the "safety valve" exception. The commentary to § 5C1.2 defines "[m]ore than 1 criminal history point, as determined under the sentencing guidelines" to mean "more than one criminal history point as determined under [U.S.S.G.] § 4A1.1 (Criminal History Category)." U.S.S.G. § 5C1.2 commentary, applic. note 1. Section 4A1.1 of the Sentencing Guidelines contains the schedule that determines how a court calculates a defendant's criminal history points. The language in the commentary to § 5C1.2 is unambiguous, and clearly limits the district court's authority to apply the "safety valve" provision to cases where a defendant has not more than one criminal history point as calculated under § 4A1.1, regardless of whether the district court determines that a downward departure in the defendant's sentence is warranted by § 4A1.3. *See United States v. Robinson*, 158 F.3d 1291, 1294 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1011 (1999); *United States v. Orozco*, 121 F.3d 628, 630 (11th Cir. 1997); *United States v. Valencia-Andrade*, 72 F.3d 770, 774 (9th Cir. 1995).
>
> . . . "Section 4A1.3 does not authorize a court to add or subtract individual criminal history points from a defendant's record"; instead, it merely allows the court to impose a sentence outside the range prescribed by the guidelines for a defendant's particular offense level and criminal history category. *United States v. Owensby*, 188 F.3d 1244, 1246 (10th Cir. 1999); *see also United States v. Webb*, 218 F.3d 877, 881 (8th Cir. 2000); *United States v. Robinson*, 158 F.3d 1291, 1294 (D.C. Cir. 1998); *United States v. Resto*, 74 F.3d 22, 28 (2d Cir. 1996). By its own terms, § 4A1.3 permits the sentencing judge to "consider imposing a sentence departing from the otherwise applicable guideline range." Thus, the plain language of the section contemplates a change in the defendant's sentence, not his or her criminal history

points. Section 4A1.3 continues to explain that "[i]n considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." U.S.S.G. § 4A1.3 (emphasis added). As this statement makes clear, the effect of a departure under § 4A1.3 is to allow the court to sentence a defendant with reference to the guideline range applicable to a defendant with another criminal history category, not to change the defendant's actual criminal history category. Moreover, neither § 4A1.1 nor § 4A1.2 make reference to the departure provisions of § 4A1.3 as having any bearing on the calculation of a defendant's criminal history points.

*Penn*, 282 F.3d at 881-82. Thus, in failing to consider a prior conviction in its computation of Branch's criminal history points, the district court's initial sentence ran directly counter to this Court's holding in *Penn*.

On appeal, Branch contends that *Penn*'s holding is no longer valid in light of the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and *Kimbrough v. United States*, 128 S.Ct. 558 (2007). Branch contends that a district court now has discretion to "disagree" with the Guidelines' provisions under *Booker* and *Kimbrough*. Consequently, he contends that the district court did not commit clear error in departing from the Guidelines' criminal history score in order to make him safety-valve eligible.

*Booker* did not alter our holding in *Penn*. In *Booker*, the Court severed those parts of the Federal Sentencing Act that required that district courts follow the Guidelines, namely §§ 3553(b)(1) and 3742(e). The Supreme Court left the rest of the Federal Sentencing Act intact. *See id.* at 259 ("[T]he remainder of the Act satisfies the Court's constitutional requirements.") Among the statutory provisions left intact after *Booker* were statutory mandatory minimum sentences, *see United States v. Gonzalez*, 257 F. App'x 932, 947 (6th Cir. 2007) ("[W]here a defendant is sentenced to a statutory mandatory minimum sentence, *Booker* is not implicated . . . ."), as well as statutorily-enacted exceptions to statutory mandatory minimum sentences, including the statutory safety-valve provision, § 3553(f). *See United States v. Patterson*, 145 F. App'x 988, 991 (6th Cir. 2005) ("*Booker* did not strike down the statutory safety valve, 18 U.S.C. § 3553(f).").

Unlike the Sixth Amendment problem resulting from a district court's treatment of the Guidelines as mandatory, *see Booker*, 543 U.S. at 233-37, no Sixth Amendment problem results when a district court treats as mandatory § 3553(f)(1)'s directive that a district court determine a defendant's criminal history under the Guidelines. The Supreme Court has repeatedly held that unlike other sentence-enhancing facts, no Sixth Amendment problem arises when a district court finds the fact of a prior conviction. *See Booker*, 543 U.S. at 244; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998).

The Ninth Circuit addressed an argument similar to that made by Branch, in *United States v. Hernandez-Castro*, 473 F.3d 1004 (9th Cir. 2007). The defendant in *Hernandez-Castro* was convicted of an offense under 21 U.S.C. § 841, and had two prior convictions, each of which carried one criminal history point under the Guidelines. *Id.* at 1006. The district court concluded that the defendant failed to satisfy § 3553(f)(1) with more than one criminal history point, and sentenced the defendant at the low end of the advisory Guidelines. *Id.* On appeal, the defendant argued that "the first requirement of the safety valve provision, § 3553(f)(1), is a creature of the Sentencing Guidelines, and therefore was rendered advisory by *Booker*," and that "even if the first requirement is not itself advisory, the district court had discretion under the Guidelines to reduce his criminal history points from two to one." *Id.*

The Ninth Circuit rejected the defendant's argument, stating that it was:

founded on the premise that *Booker*'s use of the word "advisory" is a magic incantation that renders any and all references to the Sentencing Guidelines "advisory." He posits that because *Booker* made the Sentencing Guidelines "advisory," the first prong of the safety valve provision must also be advisory, as it requires a determination of criminal history under "the Sentencing Guidelines." *See* 18 U.S.C. § 3553(f)(1). [The defendant] misapprehends the reach of *Booker*.

*Id*. at 1006. The Ninth Circuit further explained:

We begin with the understanding that *Booker* did not affect the imposition of statutory minimums. *See United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005); *see also United States v. Vieth*, 397 F.3d 615, 620 (8th Cir. 2005). To understand why Booker does not affect § 3553(f), it is helpful to summarize exactly what the Supreme Court directed in *Booker*. After concluding that the "mandatory" sentencing rules of 18 U.S.C. § 3553(b)(1) violated the Sixth Amendment, the Court excised two statutory provisions to remedy this constitutional infirmity: "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range . . . *see* 18 U.S.C.A. § 3553(b)(1) (Supp. 2004) and the provision that sets forth the standards of review on appeal . . . ." *Booker*, 543 U.S. at 259. The Court emphasized that "the remainder of the [Sentencing Guidelines] Act satisfies the Court's constitutional requirements" and went on to note that "[t]he remainder of the Act 'function[s] independently.' " *Id*. (citation omitted).

Section 3553(f) falls squarely within the "remainder of the Act" that is unaffected by *Booker*. In calculating criminal history points to determine eligibility for safety valve relief, the district court is simply ascertaining prior convictions, a determination that passes constitutional scrutiny under *Almendarez-Torres v. United States*, 523 U.S. 224, 230, 244-45 (1998), as reaffirmed in *Apprendi v. New Jersey*, 530 U.S. 466, 489-90 (2000). Criminal history points under the Guidelines are thus tied to the record of the defendant's past convictions. *See* U.S.S.G. § 4A1.1. Nothing in this scheme permits the district court to ignore the criminal history calculation of the Guidelines nor does denial of safety valve relief implicate the Sixth Amendment. *See United States v. Barrero*, 425 F.3d 154, 158 (2d Cir. 2005) (holding there is "no constitutional bar to a legislative instruction to a judge to sentence the defendant to such a mandatory minimum where, as here, the defendant is ineligible for safety valve relief based on the court's finding that he had more than one criminal history point").

*Hernandez-Castro*, 473 F.3d at 1007.

Several other circuits have reached the same conclusion post-*Booker*. *See United States v. Leon-Alvarez*, --- F.3d ----, 2008 WL 2581676, at *4 (8th Cir. 2008) ("To properly determine whether [the defendant] is eligible for safety-valve relief, the district court should have first followed the Guidelines instructions for determining his criminal history category"); *United States v. Hunt*, 503 F.3d 34, 38 (1st Cir. 2007) ("*Booker* does not excise and render advisory the requirement of § 3553(f) that a defendant have 0 or 1 criminal history points in order to qualify for safety valve relief."); *United States v. Mendoza-Borunda*, 239 F. App'x 416, 419 (10th Cir. 2007) ("[T]he district court . . . could not ignore one of [the defendant]'s criminal history points in order to make him eligible for safety-valve relief."); *United States v. Ocampo*, No. 06-3070, 2007 WL 1849427, at *2 (7th Cir. July 19, 2007) ("Even after *Booker* courts must correctly calculate criminal history points."); *United States v. McKoy*, 452 F.3d 234, 239 (3d Cir. 2006) ("Interpreting § 3553(f) as advisory would effectively excise that section from the statute. . . . Effectively excising one of the remaining subsections would be inconsistent with *Booker*."); *United States v. Brehm*, 442 F.3d 1291,

1300 (11th Cir. 2006) (holding that "*Booker* did not render the calculation of eligibility requirements for safety-valve relief advisory"); *United States v. Barrero*, 425 F.3d 154, 157 (2d Cir. 2005) ("*Booker* did not alter the content of the Guidelines or the requirement that Guidelines results be determined according to the terms of the Guidelines.").

   *Kimbrough* also did not alter the validity of § 3553(f)(1). In *Kimbrough*, the Supreme Court addressed the advisory nature of the sentencing disparity between crack and cocaine offenses under the Guidelines, but did not cast doubt on the validity of statutory mandatory minimum sentences, or statutorily-enacted exceptions to those sentences. *See Kimbrough*, 128 S.Ct. at 574 (noting that "possible variations among district courts are constrained by the [statutory] mandatory minimums Congress prescribed in [the Anti-Drug Abuse Act of 1986]"); *id.* at 572 ("[T]he 1986 Act does not require . . . after *Booker*, sentencing courts[]to adhere to the 100-to-1 ratio for crack quantities *other than those triggering the statutory mandatory minimum sentences*.") (emphasis added). *Kimbrough* merely provided that district courts may deviate from sentences *under the advisory Guidelines* on the basis of policy disagreements with its provisions. *See Kimbrough*, 128 S.Ct. at 564 (providing that district courts, in fashioning a sentence under § 3553(a), "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses"). However, as noted, *Booker* and its progeny did not invalidate the criteria established by Congress for sentencing a defendant below the statutory mandatory minimum sentence; by failing to correctly compute Branch's criminal history points, the district court avoided a statutory requirement that a defendant have no more than one criminal history point for safety-valve eligibility.[3]

   Branch's reliance on *United States v. Lett*, 483 F.3d 782 (11th Cir. 2007), *petition for cert. filed*, 76 USLW 3444 (Feb. 12, 2008) (07-1042), is misplaced. In *Lett*, the defendant qualified for safety-valve relief because he had no prior criminal record, and therefore no criminal history points. Despite this, the district court initially declined to sentence the defendant below the statutory mandatory minimum because the minimum of the defendant's Guidelines range was 70 months, above the statutory mandatory minimum. The district court based its decision on U.S.S.G. § 5C1.2, which states that "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)."

   The district court in *Lett* later modified the sentence under Rule 35(a), based on its conclusion that post-*Booker*, its "sentencing discretion is not bounded by a statutory mandatory minimum sentence, irrespective of whether the accurately calculated advisory guidelines sentencing range is above or below that mandatory minimum." *Id.* at 786-87 (quoting district court's opinion).

   The Eleventh Circuit held that the district court's use of Rule 35(a) was improper, because the first sentence was "arguable error" rather than "clear error" permitting correction. *Id.* at 791. The Eleventh Circuit reasoned that "[i]t is not obvious that the *Booker* decision eviscerated mandatory minimum sentences in every case where the defendant meets the five criteria for safety valve treatment, including those [instances] in which the advisory guideline range is above the mandatory minimum." *Id.* at 788-89. The Court held that "proper resolution of the mandatory minimum and safety valve issue that prompted [the district court's] Rule 35(a) modification of [the defendant]'s sentence is not clear. There is no decision on point from any court, and reasonable people could differ about the matter." *Id.* at 790. Although the *Lett* court suggested that proper resolution of the issue would turn "not just the congressional intent behind 21 U.S.C. § 841(b)(1)(B)

---

   [3]Even when applying the advisory Guidelines, "a district court should begin all sentencing proceedings by *correctly calculating* the applicable Guidelines range." *Gall v. United States*, 128 S.Ct. 586, 596 (2007) (emphasis added). It follows then, that the district court must always correctly compute a defendant's criminal history points, because a "calculation of criminal history categories is [a] prerequisite to [the] calculation of the correct Guidelines sentencing range." *United States v. Brehm*, 442 F.3d 1291, 1300 (11th Cir. 2006).

and 18 U.S.C. § 3553(f), or the Sentencing Commission's intent behind § 5C1.2 of the guidelines, but also the intent behind the Supreme Court's reconstructive interpretation of the sentencing statutes in the remedial part of the *Booker* decision," it declined to resolve the issue in its current procedural posture. *Id*. at 789.

Here, however, unlike the defendant in *Lett*, the U.S.S.G. § 5C1.2 safety valve criteria were not met because Branch had two criminal history points. Furthermore, it is clear under *Penn* that the district court lacked discretion to alter Branch's number of criminal history points. *Booker* and *Kimbrough* did nothing to change that.

Because the district court committed "clear error"–not "arguable error"–in its disregard of a criminal history point, it acted well within its authority to issue a corrected sentence under Rule 35(a).

### III.  Conclusion

For the reasons stated above, we **AFFIRM** Branch's conviction and sentence.