NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0601n.06

No. 10-1874

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 12, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| ANTONIO RODRIGUEZ, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: McKEAGUE and WHITE, Circuit Judges; BARRETT, District Judge.[*]

PER CURIAM. Antonio Rodriguez entered a conditional guilty plea to possession with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a). He now appeals the denial of his motion to suppress. We affirm.

Michigan State Police Trooper Dennis Diggs, the sole witness at the suppression hearing, testified that on the morning of December 1, 2009, he was sitting in a marked police car on the median of I-94, monitoring eastbound traffic. Rodriguez drove by in a Kia Sedona van, and Diggs noticed that when Rodriguez passed by the police car, he leaned back in his seat in an apparent attempt to hide behind the door post. Diggs pulled onto the interstate and began following Rodriguez, and eventually stopped him for driving too closely behind a semi-truck.

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

Rodriguez informed Diggs that he was traveling to his cousin's bachelor party, which was on a Thursday night. Rodriguez did not know the date of his cousin's wedding. Diggs directed Rodriguez to stand in front of the police car while Diggs sat in the police car and checked his license, registration, and insurance papers. After completing the record check, Diggs motioned Rodriguez to get into the back seat of the police car, at which point he returned his papers, told him that he would not be ticketed, and briefly advised him of the need to drive at a safe distance behind other vehicles. At the end of the discussion, Diggs told Rodriguez that he was "good to go." Immediately after making that statement, however, Diggs said, "Let me ask you something," and proceeded to ask Rodriguez additional questions about his travel plans, as well as questions about his arrest history and whether there was anything illegal in his van. After approximately four minutes of questioning, Diggs asked Rodriguez for permission to search his van, and Rodriguez consented. Ultimately, law enforcement officers recovered two kilograms of heroin and ten kilograms of cocaine from a hidden compartment in the van.

Rodriguez filed a motion to suppress, arguing that he was stopped without probable cause and that even if the initial stop was valid, he was illegally detained after the purpose of the stop was completed. After the district court denied the motion, Rodriguez entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. The district court sentenced him to 120 months in prison, to be followed by five years of supervised release.

In an appeal of the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Bell*, 555 F.3d 535, 539

(6th Cir. 2009). "When a district court has denied the motion to suppress, we must consider the evidence in the light most favorable to the government." *Id.* (internal quotation marks omitted).

Rodriguez first argues that Diggs did not have probable cause to initiate the traffic stop. "A police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred." *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008). Diggs, whose testimony the district court found "highly credible," testified that Rodriguez was driving too close to the semi-truck in front of him, a violation of Michigan Compiled Laws § 257.643(1). Rodriguez has not provided any "contradictory testimony" to show that he was not driving too close to the semi-truck. *United States v. Garrido*, 467 F.3d 971, 979 (6th Cir. 2006) (citation omitted). Rather, he argues that the stop was unwarranted because he was neither speeding nor driving too slowly, he acted in a typical manner by pulling behind another vehicle after he noticed the police car behind him, and Diggs could not reasonably have thought that he was trying to hide behind the door post. At most, these arguments suggest that Diggs had an ulterior motive for the traffic stop, which is irrelevant to its legality. *See id.* at 977 ("A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." (quoting *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002))). In light of Diggs's uncontested testimony that Rodriguez committed a traffic violation, we find no error in the district court's determination that the initial traffic stop was lawful.

Rodriguez further argues that even if the traffic stop was justified, he was unlawfully detained after the completion of the stop. During the suppression hearing, Diggs testified that once he told Rodriguez that he was "good to go," the purpose of the traffic stop was complete. It is well settled

that once the purpose of the traffic stop is completed, a police officer "may not 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *Torres-Ramos*, 536 F.3d at 550 (quoting *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008)); *see also United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) ("Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot.") (citations omitted), *cert. denied*, 528 U.S. 1176 (2000). However, the district court concluded that Rodriguez was not detained because a reasonable person would have believed that he was free to go after being told that he was "good to go."

As a general matter, a police officer does not violate the Fourth Amendment by asking an individual questions after the initial traffic stop has ended. *United States v. Branch*, 537 F.3d 582, 588 (6th Cir. 2008) (citing *United States v. Erwin*, 155 F.3d 818, 823 (1998) (en banc) (noting that an "officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions."). Instead, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Therefore, "law enforcement officers may ask citizens 'general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a

4

reasonable person to believe that the person was not free to leave.'" *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008) (quoting *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000)).

For example, in *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004), we held that a reasonable person would not feel free to leave after the conclusion of a traffic stop where a police officer told the driver to "just hang out right here for me, okay?" However, words alone may not be enough in every instance. "The test is not whether police expressly instruct a person not to leave, but whether the totality of the circumstances would convey to a reasonable person that she is not free to leave." *United States v. Williams*, 615 F.3d 657, 665 (6th Cir. 2010) (citing *United States v. Drayton*, 536 U.S. 194, 201 (2002) and *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). As part of this analysis, we have identified several factors as evidence of a seizure: "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Williams*, 615 F.3d at 662 (quoting *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007)). We have also recognized "a criminal accusation by law enforcement as a factor indicating that an individual is seized." *Id.* at 664 (citing *Florida v. Royer*, 460 U.S. 491 (1983)).

None of these factors are present in this case. Diggs was the only officer questioning Rodriguez. Diggs never displayed his weapon, touched Rodriguez, or accused Rodriguez of a crime. As the district court noted, Diggs was "relaxed, polite, and respectful" and there was "nothing bullying or accusatory about Diggs' tone." After telling Rodriguez that he was "good to go," Diggs did not ask Rodriguez to wait or remain in the police car. Diggs merely resumed his discussion with

Rodriguez by saying, "Let me ask you something." We have previously found that a similar question, when asked in a nonthreatening manner, does not indicate that a person is seized. *See United States v. Moore*, 675 F.2d 802, 808 (6th Cir. 1982) (no seizure where DEA agent approached defendant and asked "Can I ask you a few questions" in nonthreatening manner).

However, during the four minutes of questioning that followed Diggs' "good to go" comment, Rodriguez was seated in the back of the police cruiser. In *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991), we found that when the defendant was placed in the police cruiser, he was seized within the meaning of the Fourth Amendment. Nevertheless, *Richardson* did not establish a bright-line rule. There were other factors present in that case which led to the conclusion that a person would not believe that he was free to leave: the defendant was approached by four officers and informed that he was the subject of a drug investigation; the officers immediately asked for consent to search the vehicle; and when the defendant declined to consent to the search, he was placed in the back of an unmarked police car. *Id.* In contrast, Rodriguez had been standing on the side of the road while Diggs checked his paperwork. Diggs testified that he motioned for Rodriguez to sit in the police car to get out of the cold. Under these circumstances, we conclude that no seizure took place, and therefore there was no need for Diggs to have reasonable and articulable suspicion to ask additional questions after the purpose of the traffic stop was complete.

In the alternative, we find that reasonable suspicion did exist. The existence of reasonable suspicion is a mixed question of law and fact that we review *de novo*. *Torres-Ramos*, 536 F.3d at 550. Nonetheless, in light of the "institutional advantage" possessed by the district court, including

6

its ability to observe the demeanor of witnesses, we give "due weight" to the inferences that the district court draws from the facts. *Id.* (citation omitted).

"Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *Bell*, 555 F.3d at 540 (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001)). "Reviewing courts 'must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *United Slates v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted)).

At the suppression hearing, Diggs identified several factors that led him to suspect criminal activity: 1) Rodriguez leaned back in his seat when he passed the patrol car in an apparent attempt to hide his face behind the door post; 2) Rodriguez immediately slowed down when he passed the police car; 3) the stretch of I-94 between Chicago and Detroit is a pipeline corridor for drugs; 4) the van smelled strongly of air fresheners, which are commonly used to mask the odor of drugs; 5) the van was not registered to Rodriguez; 6) Rodriguez stated that he was going to his cousin's bachelor party, but he did not know the date of the wedding; and 7) Rodriguez said that the party was taking place on Thursday, which seemed like an unusual night for a bachelor party.

We agree with the district court that these factors, viewed in their totality, were sufficient to create a reasonable suspicion of illegal activity. As Rodriguez points out, some of these factors are similar to those that we have assigned little weight in other cases, such as traveling between a source and destination city for narcotics, *see Townsend*, 305 F.3d at 543, and others are not particularly

7

incriminating. For example, Diggs himself testified that it is not unusual for drivers to slow down when they see a police car on the highway. The question, however, "is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *Garrido*, 467 F.3d at 982 (citation omitted); *see Ellis*, 497 F.3d at 614. Viewing the factors together, and recognizing that Diggs "was entitled to assess the circumstances . . . in light of his experience as a police officer and his knowledge of drug courier activity," we conclude that "the brief detention was a reasonable response to the totality of the circumstances." *Ellis*, 497 F.3d at 614 (citation omitted).

For these reasons, the district court's judgment is **AFFIRMED**.

**HELENE N. WHITE, Circuit Judge** (dissenting). Because I conclude that Rodriguez was detained without reasonable suspicion after the purpose of the traffic stop was completed, I respectfully dissent.

In determining whether a detention took place after the purpose of a traffic stop is complete, the question is whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Branch*, 537 F.3d 582, 588 (6th Cir. 2008) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). A court must "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

In *Branch*, we found no seizure took place where the officer told the defendant he was free to leave but asked if he would mind staying to answer a few more questions. 537 F.3d at 588. On the other hand, in *United States v. Richardson*, an officer handed a person a ticket and shook his hand, indicating he was free to leave, but then stated, "Okay, just hang out right here for me, okay?" 385 F.3d 625, 630 (6th Cir. 2004). We held that those words were enough to constitute seizure. *Id.*

Here, Officer Diggs directed Rodriguez to sit in the back seat of the patrol car. Then, upon returning Rodriguez's paperwork and telling him that he was "good to go," Diggs immediately proceeded to say, "So let me ask you something," and initiated a series of questions wholly unrelated to the traffic stop, many of which Rodriguez had already answered. These were detailed questions about Rodriguez's travel plans, his relationship with the cousin whom he claimed to be visiting, his job, his criminal history, his gang affiliation, and whether he had illegal contraband in his vehicle.

9

Diggs's statement that Rodriguez was "good to go," immediately followed by further questioning, would not convey to a reasonable person that he or she was free to leave, particularly because Rodriguez was seated in the back seat of the patrol car. It is more likely to have conveyed merely that Rodriguez would not receive a ticket for his traffic violation. It could also have conveyed that Diggs momentarily believed Rodriguez was free to leave, but then changed his mind and decided further detention was appropriate. Additionally, the phrase, "So let me ask you something," was hardly a request for permission to ask questions. It is closer to the phrase used by officers in *Richardson*, "Okay, just hang out right for me, okay?" *Richardson*, 385 F.3d at 630. Although that phrase was styled as a question, we held that it conveyed that the person asked was not free to walk away and ignore the request. *Id.*

In holding that Rodriguez was not detained, the majority points to Diggs's respectful demeanor and non-accusatory tone. But the officer in *Richardson* did not display an intimidating demeanor or use coercive language, and we noted that "[r]egardless of [the officer's] demeanor, however, his words alone were enough to make a reasonable person in Collier's shoes feel that he would not be free to walk away and ignore [the officer's] request." *Id.*

I would similarly conclude that Diggs's words, said to Rodriguez while he was seated in the patrol car, constituted further detention for Fourth Amendment purposes.

Such detention constitutes an illegal seizure unless it is justified by reasonable suspicion. *See United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008). In determining the existence of reasonable suspicion, a court must evaluate the totality of the circumstances to determine whether the combination of factors considered by the officer is sufficient for reasonable suspicion. *See*

*United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002). Even if each individual factor is readily susceptible to an innocent explanation, the combination of factors taken together may give rise to reasonable suspicion that criminal activity may be afoot. *See United States v. Garrido*, 467 F.3d 971, 982 (6th Cir. 2006).

In *Townsend*, officers stopped an automobile for a traffic violation and then noticed a number of unusual factors, including: (1) As the officers approached the vehicle defendant put his hands in the air without prompting; (2) Defendant volunteered to officers that he was traveling faster than the speed at which he had been clocked, which the officer found reflective of someone who wanted to quickly end his interaction with police; (3) the officers viewed defendant's travel plans as dubious because he claimed he was visiting his sister in Columbus but did not know her address, and would have reached her house between 4 and 5 AM at his speed; (4) the officers claimed that the Chicago to Columbus route was a drug corridor; (5) the officers observed three cellular telephones and a bible in the passenger compartment, which they believed were typical of drug couriers for communication and for deflecting suspicion of illegal activity, respectively; and (6) the officers, while frisking the defendants, felt what appeared to be rolls of currency in their pockets. *Townsend*, 305 F.3d at 542–45. We recognized those factors as valid considerations in forming reasonable suspicion, but found that they "are all relatively minor and, in many cases, are subject to significant qualification. The fact of the matter is that this case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases." *Id.* at 545. Accordingly, we held that the officers lacked reasonable suspicion to detain the defendants. *Id.*

On the other hand, in *Branch*, this Court distinguished *Townsend* and found reasonable suspicion justified the detention of two individuals where the officer had previously seen them at a mini-mart where they had actively tried to avoid him, the individuals were driving a rental car that was several weeks overdue, their driver's licenses did not match their claimed residences, and the individuals exhibited extraordinary and increasing nervousness. *Branch*, 537 F.3d at 588–89.

Here, the factors cited by the district court are not sufficient to establish reasonable suspicion. We have repeatedly held that travel between population centers, including centers thought to be known for narcotics distribution, is a weak indicator of illegal activity. *See Townsend*, 305 F.3d at 543–44 (noting that travel between two large, mutually proximate Midwestern cities is a common occurrence); *United States v. Urrieta*, 520 F.3d 569, 576–77 (6th Cir. 2008) (finding that travel between California, which officers believed to be a source state for drugs, and Atlanta, added no significant weight to the reasonable suspicion analysis). Second, the fact that Rodriguez was driving another person's vehicle is a weak indicator of criminal activity, particularly because Rodriguez explained to Diggs that his own pickup truck would not have made the trip.

Third, Rodriguez's supposedly "dubious" travel plans were not dubious. There is nothing inherently suspicious about a bachelor party being held on a Thursday. And when asked the date of the wedding, Rodriguez initially indicated he did not know and reiterated that he was going to the bachelor party. He later indicated that the wedding was several months away. As in *Townsend*, there is no real inconsistency in his story, and there is nothing inherently suspicious about his responses. *See, e.g., Townsend*, 305 F.3d at 543 (finding late-night travel was not so inherently suspicious as to support a finding of reasonable suspicion).

Fourth, Rodriguez's leaning back in his seat is also of limited relevance to the reasonable suspicion determination. Diggs testified that the car door frame did not actually obstruct his view of Rodriguez, and Rodriguez could have been avoiding making eye contact with the officer for any number of reasons. *Cf. Urrieta*, 520 F.3d at 577 (nervousness is given little or no weight in the reasonable-suspicion calculation).

Finally, although the strong odor of the air fresheners is perhaps the strongest indicator of criminal activity, it is still a relatively weak indicator by itself. *Torres-Ramos*, 536 F.3d at 553 (finding reasonable suspicion existed when weak indicators of criminal activity such as the odor of air freshener, passengers' nervousness, and tinted windows were combined with stronger indicators such as inconsistencies in the passengers' stories regarding their journey and the fact that the van's owner was currently the subject of a DEA wiretap). Further, Diggs did not find the odor significant enough at the time to comment upon, or to ask Rodriguez about.

Because all of the factors supporting reasonable suspicion are weak indicators of criminal activity, and are unaccompanied by any strong indicators of criminal activity, I would conclude that the combination of factors considered by Diggs did not give rise to reasonable suspicion, and therefore Rodriguez was unconstitutionally detained after the traffic stop was complete. *Townsend*, 305 F.3d at 545.

Lastly, I would conclude that Rodriguez's illegal seizure requires suppression of the evidence recovered from the search notwithstanding his subsequent consent to search his car. In *United States v. Lopez-Arias*, we noted that "the exclusionary rule may operate to exclude evidence obtained as the result of a valid, voluntary consent to search." 344 F.3d 623, 629 (6th Cir. 2003). In order to

13

avoid the consequences of the exclusionary rule, "not only must the consent be valid, i.e. voluntary, as required by [*Ohio v. Robinette*, 519 U.S. 33 (1996)], but the causal chain between the illegal seizure and the consent must be broken." *Lopez-Arias*, 344 F.3d at 629 (citing *Dunaway v. New York*, 442 U.S. 200, 217–19 (1979)). In *Lopez-Arias*, a DEA stop of defendants had progressed from the level of an investigative detention to an arrest without probable cause. We suppressed a voluntary consent to search where it was given "within half an hour from the initial stop and during the illegal arrest," and "[t]here was no intervening time or event between the illegal arrest and defendants' consent." *Id.* at 630. *See also United States v. Caicedo*, 84 F.3d 1184, 1190 (6th Cir. 1996) (where individual was illegally patted down without reasonable suspicion and then consented to a search of his backpack, the illegal seizure vitiated the subsequent consent where there was no intervening act of free will to purge the taint of the unlawful invasion).

There was no intervening time or event to break the causal chain between the illegal seizure and Rodriguez's consent, which was given during the illegal detention at the end of Officer Diggs's questioning of Rodriguez. Accordingly, I would conclude that the evidence recovered as a result of that consent must be suppressed as fruit of the poisonous tree. I would therefore reverse the district court's denial of the motion to suppress.