HELENE N. WHITE, Circuit Judge
(dissenting).
Because I conclude that Rodriguez was detained without reasonable suspicion after the purpose of the traffic stop was completed, I respectfully dissent.
In determining whether a detention took place after the purpose of a traffic stop is complete, the question is whether, “in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Branch, 537 F.3d 582, 588 (6th Cir.2008) (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). A court must “consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that *21 the person was free to decline the officers’ requests or otherwise terminate the encounter.” Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
In Branch, we found no seizure took place where the officer told the defendant he was free to leave but asked if he would mind staying to answer a few more questions. 537 F.3d at 588. On the other hand, in United States v. Richardson, an officer handed a person a ticket and shook his hand, indicating he was free to leave, but then stated, “Okay, just hang out right here for me, okay?” 385 F.3d 625, 630 (6th Cir.2004). We held that those words were enough to constitute seizure. Id.
Here, Officer Diggs directed Rodriguez to sit in the back seat of the patrol car. Then, upon returning Rodriguez’s paperwork and telling him that he was “good to go,” Diggs immediately proceeded to say, “So let me ask you something,” and initiated a series of questions wholly unrelated to the traffic stop, many of which Rodriguez had already answered. These were detailed questions about Rodriguez’s travel plans, his relationship with the cousin whom he claimed to be visiting, his job, his criminal history, his gang affiliation, and whether he had illegal contraband in his vehicle.
Diggs’s statement that Rodriguez was “good to go,” immediately followed by further questioning, would not convey to a reasonable person that he or she was free to leave, particularly because Rodriguez was seated in the back seat of the patrol car. It is more likely to have conveyed merely that Rodriguez would not receive a ticket for his traffic violation. It could also have conveyed that Diggs momentarily believed Rodriguez was free to leave, but then changed his mind and decided further detention was appropriate. Additionally, the phrase, “So let me ask you something,” was hardly a request for permission to ask questions. It is closer to the phrase used by officers in Richardson, “Okay, just hang out right for me, okay?” Richardson, 385 F.3d at 630. Although that phrase was styled as a question, we held that it conveyed that the person asked was not free to walk away and ignore the request. Id.
In holding that Rodriguez was not detained, the majority points to Diggs’s respectful demeanor and non-accusatory tone. But the officer in Richardson did not display an intimidating demeanor or use coercive language, and we noted that “[rjegardless of [the officer’s] demeanor, however, his words alone were enough to make a reasonable person in Collier’s shoes feel that he would not be free to walk away and ignore [the officer’s] request.” Id.
I would similarly conclude that Diggs’s words, said to Rodriguez while he was seated in the patrol car, constituted further detention for Fourth Amendment purposes.
Such detention constitutes an illegal seizure unless it is justified by reasonable suspicion. See United States v. Torres-Ramos, 536 F.3d 542, 550 (6th Cir.2008). In determining the existence of reasonable suspicion, a court must evaluate the totality of the circumstances to determine whether the combination of factors considered by the officer is sufficient for reasonable suspicion. See United States v. Townsend, 305 F.3d 537, 542 (6th Cir.2002). Even if each individual factor is readily susceptible to an innocent explanation, the combination of factors taken together may give rise to reasonable suspicion that criminal activity may be afoot. See United States v. Garrido, 467 F.3d 971, 982 (6th Cir.2006).
*22 In Townsend, officers stopped an automobile for a traffic violation and then noticed a number of unusual factors, including: (1) As the officers approached the vehicle defendant put his hands in the air without prompting; (2) Defendant volunteered to officers that he was traveling faster than the speed at which he had been clocked, which the officer found reflective of someone who wanted to quickly end his interaction with police; (3) the officers viewed defendant’s travel plans as dubious because he claimed he was visiting his sister in Columbus but did not know her address, and would have reached her house between 4 and 5 AM at his speed; (4) the officers claimed that the Chicago to Columbus route was a drug corridor; (5) the officers observed three cellular telephones and a bible in the passenger compartment, which they believed were typical of drug couriers for communication and for deflecting suspicion of illegal activity, respectively; and (6) the officers, while frisking the defendants, felt what appeared to be rolls of currency in their pockets. Townsend, 305 F.3d at 542-45. We recognized those factors as valid considerations in forming reasonable suspicion, but found that they “are all relatively minor and, in many cases, are subject to significant qualification. The fact of the matter is that this case lacks any of the stronger indicators of criminal conduct that have accompanied these minor factors in other cases.” Id. at 545. Accordingly, we held that the officers lacked reasonable suspicion to detain the defendants. Id.
On the other hand, in Branch, this Court distinguished Townsend and found reasonable suspicion justified the detention of two individuals where the officer had previously seen them at a mini-mart where they had actively tried to avoid him, the individuals were driving a rental car that was several weeks overdue, their driver’s licenses did not match their claimed residences, and the individuals exhibited extraordinary and increasing nervousness. Branch, 537 F.3d at 588-89.
Here, the factors cited by the district court are not sufficient to establish reasonable suspicion. We have repeatedly held that travel between population centers, including centers thought to be known for narcotics distribution, is a weak indicator of illegal activity. See Townsend, 305 F.3d at 543-44 (noting that travel between two large, mutually proximate Midwestern cities is a common occurrence); United States v. Urrieta, 520 F.3d 569, 576-77 (6th Cir.2008) (finding that travel between California, which officers believed to be a source state for drugs, and Atlanta, added no significant weight to the reasonable suspicion analysis). Second, the fact that Rodriguez was driving another person’s vehicle is a weak indicator of criminal activity, particularly because Rodriguez explained to Diggs that his own pickup truck would not have made the trip.
Third, Rodriguez’s supposedly “dubious” travel plans were not dubious. There is nothing inherently suspicious about a bachelor party being held on a Thursday. And when asked the date of the wedding, Rodriguez initially indicated he did not know and reiterated that he was going to the bachelor party. He later indicated that the wedding was several months away. As in Townsend, there is no real inconsistency in his story, and there is nothing inherently suspicious about his responses. See, e.g., Townsend, 305 F.3d at 543 (finding late-night travel was not so inherently suspicious as to support a finding of reasonable suspicion).
Fourth, Rodriguez’s leaning back in his seat is also of limited relevance to the reasonable suspicion determination. Diggs testified that the car door frame did not actually obstruct his view of Rodri *23 guez, and Rodriguez could have been avoiding making eye contact with the officer for any number of reasons. Cf. Urrieta, 520 F.3d at 577 (nervousness is given little or no weight in the reasonable-suspicion calculation).
Finally, although the strong odor of the air fresheners is perhaps the strongest indicator of criminal activity, it is still a relatively weak indicator by itself. Torres-Ramos, 536 F.3d at 553 (finding reasonable suspicion existed when weak indicators of criminal activity such as the odor of air freshener, passengers’ nervousness, and tinted windows were combined with stronger indicators such as inconsistencies in the passengers’ stories regarding their journey and the fact that the van’s owner was currently the subject of a DEA wiretap). Further, Diggs did not find the odor significant enough at the time to comment upon, or to ask Rodriguez about.
Because all of the factors supporting reasonable suspicion are weak indicators of criminal activity, and are unaccompanied by any strong indicators of criminal activity, I would conclude that the combination of factors considered by Diggs did not give rise to reasonable suspicion, and therefore Rodriguez was unconstitutionally detained after the traffic stop was complete. Townsend, 305 F.3d at 545.
Lastly, I would conclude that Rodriguez’s illegal seizure requires suppression of the evidence recovered from the search notwithstanding his subsequent consent to search his car. In United States v. Lopez-Arias, we noted that “the exclusionary rule may operate to exclude evidence obtained as the result of a valid, voluntary consent to search.” 344 F.3d 623, 629 (6th Cir.2003). In order to avoid the consequences of the exclusionary rule, “not only must the consent be valid, i.e. voluntary, as required by [Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ], but the causal chain between the illegal seizure and the consent must be broken.” Lopez-Arias, 344 F.3d at 629 (citing Dunaway v. New York, 442 U.S. 200, 217-19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). In Lopez-Arias, a DEA stop of defendants had progressed from the level of an investigative detention to an arrest without probable cause. We suppressed a voluntary consent to search where it was given “within half an hour from the initial stop and during the illegal arrest,” and “[tjhere was no intervening time or event between the illegal arrest and defendants’ consent.” Id. at 630. See also United States v. Caicedo, 85 F.3d 1184, 1190 (6th Cir.1996) (where individual was illegally patted down without reasonable suspicion and then consented to a search of his backpack, the illegal seizure vitiated the subsequent consent where there was no intervening act of free will to purge the taint of the unlawful invasion).
There was no intervening time or event to break the causal chain between the illegal seizure and Rodriguez’s consent, which was given during the illegal detention at the end of Officer Diggs’s questioning of Rodriguez. Accordingly, I would conclude that the evidence recovered as a result of that consent must be suppressed as fruit of the poisonous tree. I would therefore reverse the district court’s denial of the motion to suppress.