*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0434p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 06-6339

LAMAR WILSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 06-10025—James D. Todd, Chief District Judge.

Argued: September 17, 2007

Decided and Filed: October 29, 2007

Before: BATCHELDER and GILMAN, Circuit Judges; VARLAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Braden H. Boucek, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. David W. Camp, LAW OFFICE OF DAVID CAMP, Jackson, Tennessee, for Appellee. **ON BRIEF:** Braden H. Boucek, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. David W. Camp, LAW OFFICE OF DAVID CAMP, Jackson, Tennessee, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. This case involves the constitutionality of a pat-down search of a car passenger that resulted in the discovery of over one pound of powder cocaine. Lamar Wilson was a passenger in a car driven by Michael Jones when the car was pulled over by police officers because neither man was wearing a seat belt. The encounter escalated from a routine traffic stop into a pat-down search for weapons. During this pat-down search, a package wrapped in duct tape, later discovered to be cocaine, fell from one of Wilson's pant legs.

The district court granted Wilson's motion to suppress evidence of the cocaine, concluding that the government had not shown that the officers had a reasonable belief that Wilson was armed

_____

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

and dangerous before conducting the pat-down search. On appeal, the government contends that the search did not violate the Fourth Amendment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.      Factual background

On the afternoon of January 9, 2006, Chief Deputy Ronnie Moore and Deputy James Jones of the Lake County Sheriff's Department were traveling north on Highway 78 in Tiptonville, Tennessee. The officers passed a gray Chevrolet, driven by Michael Jones and bearing Kentucky license plates, traveling in the opposite direction. Wilson was riding in the Chevrolet's passenger seat. Officer Moore testified that he and Officer Jones (hereafter referred to by his first name of James) pulled the Chevrolet over after noticing that neither Michael Jones (hereafter referred to as Jones) nor Wilson was wearing a seat belt, which was in violation of Tennessee law.

Officer Moore approached Jones while Officer James approached Wilson. Jones and Wilson were both seated in the vehicle and, by the time they were stopped, had put on their seat belts. Upon request, Jones produced his driver's license, which showed a Memphis address despite the fact that Jones told Officer Moore that he resided in Tiptonville. Officer Moore testified that Jones then "began talking and rambling and, in response to a question by Moore, ultimately admitted having served federal time on a gun charge." Moreover, according to Officer Moore, both Jones and Wilson were acting extremely nervous.

At this point, having observed Jones's and Wilson's behavior and learned that Jones had served time on a federal gun charge, Officer Moore returned to his patrol car to run checks on the car's license plate as well as Jones's driver's license. Officer Moore testified that although the traffic stop did not last long enough for him to receive the results of the driver's license check, he discovered that the Chevrolet was registered to an individual named Gaston. He then approached Wilson to ask if he was the owner of the car. After ascertaining that Wilson was not the owner of the car, Moore asked Wilson to provide proof of the car's registration and insurance.

While Jones and Wilson both searched for this information, Jones was also talking on his cell phone. Officer Moore asked him to end the call. Jones complied, but in doing so he turned to Wilson and said, "They're coming." Ultimately Jones and Wilson were unable to provide proof of registration or insurance for the vehicle that Jones was driving.

His suspicions raised by Jones's and Wilson's inability to produce proof of registration or insurance, Officer Moore asked Jones for permission to search the vehicle for weapons and drugs. Jones consented. The officers then asked Jones and Wilson to exit the vehicle so that the officers could conduct the search. Officer Moore explained to Wilson that he needed to pat him down for the officer's safety. A pat-down of Jones was contemporaneously conducted by Officer James. As Officer Moore conducted the pat-down, a package wrapped in gray duct tape fell from one of Wilson's pant legs and landed on the ground. Officer Moore suspected that the package contained drugs. Later testing indeed confirmed that the package contained one pound, two ounces of powder cocaine.

At this point, Officer Moore tried to handcuff Wilson, who resisted arrest by kicking Moore in the shin and fleeing the scene. Officer James's simultaneous attempt to handcuff Jones was also resisted. Wilson briefly stopped fleeing at Officer Moore's command, but broke free a second time and jumped into a car belonging to Jones's friend LaShawnda Ceasar, who had arrived at the scene in response to Jones's cell-phone call. When Wilson was later apprehended by authorities, he told the police that the cocaine belonged to Jones, and that Jones had given it to him to hold when they were pulled over for the seat-belt violation.

## B.       Procedural background

Jones and Wilson were subsequently indicted on one count of cocaine possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and on one count of aiding and abetting the substantive offense, in violation of 18 U.S.C. § 2. Both defendants moved to suppress evidence of the cocaine, contending that the discovery was the result of an unreasonable search and seizure in violation of the Fourth Amendment. The district court denied the motion as to Jones but granted it as to Wilson, concluding that the government had failed to show that Officer Moore "had a reasonable belief that Wilson was armed and dangerous before conducting the pat-down search." This timely interlocutory appeal by the government followed.

## II.  ANALYSIS

## A.       Standard of review

In reviewing a motion to suppress evidence, we review the district court's legal determinations de novo, but will not set aside its factual findings unless they are clearly erroneous. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006). "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (quotation marks omitted). The district court's conclusion cannot be clearly erroneous where there are two permissible views of the evidence. *Id*. We also "must review the evidence in the light most likely to support the district court's decision." *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996) (quotation marks omitted).

Moreover, "even the application of the legal principles governing reasonable suspicion to the facts is subject to some deference." *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002). "Although the standard of review on the ultimate reasonable suspicion inquiry is de novo, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination." *Id*. (italics omitted). For this reason, we accord "due weight . . . to the inferences drawn from the facts by resident judges." *Id*. (quotation marks omitted).

## B.       Constitutionality of the pat-down search of Wilson

"[T]he Constitution forbids . . . not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A *Terry* stop is a type of encounter between police officers and citizens that is characterized as a "temporary involuntary detention . . . which must be predicated upon reasonable suspicion" on the part of the officers that criminal activity is afoot. *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994). "Reasonable suspicion is based on the totality of the circumstances and must require articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity." *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003) (citation, ellipses, and quotation marks omitted). The pat-down search of Wilson in the present case arose in connection with a valid traffic stop. "An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* principles." *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006).

During a *Terry* stop, "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime," is permissible. *Terry*, 392 U.S. at 27. *Terry* does not require the officer to "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. Because a pat-down search is for the limited purpose of ensuring the safety of the officer and others around him, the search must "be confined

in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id*. at 29.

The district court granted Wilson's motion to suppress evidence of the cocaine, concluding that Officer Moore had no reason to believe that Wilson was armed and dangerous. It therefore held that evidence of the cocaine was inadmissible as to Wilson under the "fruits of the poisonous tree" doctrine. The court reasoned as follows:

> In this case, the United States points to various "facts" which it claims justified the pat-down frisk of Wilson, none of which support a reasonable belief that Wilson was armed and dangerous. For example, the United States points to the fact that both defendants were "extremely nervous" upon being pulled over; that Jones "prattled on nonsensically"; that Jones admitted having served time on a federal gun charge; that neither Jones nor Wilson owned the suspect vehicle; that there was a disparity between the Memphis driver's license, the Kentucky license plates, and Jones's statement to Moore that he lived in Tiptonville; and that after Jones put up his cell phone he turned to Wilson and said "They're coming."
>
> . . .
>
> Although the United States cites these facts to justify the pat-down frisk of Wilson, most of the facts concern actions or words that Jones took or said. Those that do concern Wilson (i.e., the fact that Wilson did not own the suspect vehicle and the fact that he appeared extremely nervous), taken as a whole and applied to Wilson, would not justify a reasonably prudent man in the belief that his safety was in danger.

The government argues that the district court erred in concluding that the facts supporting a pat-down search of Jones "did not factor into the determination to pat down Wilson," and that the court failed to consider that the men were in a vehicle. More specifically, the government contends that "[g]iven the explicit reference to a gun conviction by one of the car's occupants and the statement by that occupant to the other occupant that 'they' were coming to the scene, a reasonably prudent officer would be warranted in believing that both occupants of the car were armed and dangerous."

Both the government and Wilson cite *United States v. Bell*, 762 F.2d 495 (6th Cir. 1985), in support of their respective arguments. This court in *Bell* upheld the pat-down search of Bell, a passenger in an automobile that was parked in the parking lot of an Ohio food-stamp distribution center. *Id*. at 496-97. Agents with the Federal Bureau of Investigation (FBI) approached the vehicle in order to arrest the driver, Earl Cherry, pursuant to a valid arrest warrant. *Id*. at 496-97. Cherry was suspected of a number of crimes, including food-stamp, weapons, and narcotics trafficking. *Id*. at 496. At a briefing held prior to the arrest, the agents were informed that three days earlier Cherry, accompanied by an accomplice, had purchased food stamps at less than face value from an undercover agent. *Id*. Moreover, Cherry had made an agreement to sell cocaine to another undercover agent, and that transaction was scheduled to occur on the day of the arrest. *Id*. The agents had even donned protective vests before undertaking to arrest Cherry because they anticipated that he might prove to be armed and dangerous. *Id*.

While another FBI agent was arresting Cherry, Agent Snyder approached Bell on the passenger side of the vehicle. *Id*. at 497. Snyder "ordered Bell to put his hands on the dashboard

of the car." *Id*. When Bell refused to comply, Agent Snyder ordered Bell to exit the vehicle. *Id*. Bell unlocked the door but did not otherwise move. *Id*. Agent Snyder then forcibly "extracted Bell from his seat." *Id*. At the suppression hearing, Agent Snyder testified that Bell stared at him in a defiant manner. *Id*. Bell failed to respond to Agent Snyder's next command that asked Bell "to place his hands on the roof of the car." *Id*. At this point, Agent Snyder placed Bell's hands on the car and commenced a pat-down search, which revealed that Bell was carrying an unloaded automatic pistol. *Id*.

Although this court ultimately held that the search of Bell was not in violation of his Fourth Amendment rights, it expressly declined to adopt a so-called "automatic companion" rule whereby any companion of an arrestee would be subject to a "cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *Id*. at 498 (citation omitted). "As to the propriety of the 'automatic companion' rule, we do not believe that the *Terry* requirement of reasonable suspicion under the circumstances . . . has been eroded to the point that an individual may be frisked based upon nothing more than an unfortunate choice of associates." *Id*. at 499 (citation omitted). It further concluded that an "automatic companion" rule would be inconsistent with the Supreme Court's stated policy of carefully maintaining the "narrow scope of *Terry*'s exception to the warrant requirement." *Id*. (citation and quotation marks omitted).

This court instead upheld the search in *Bell* on the basis that there were "specific articulable facts known to Agent Snyder at the time he approached the passenger side of the Cadillac, as well as rational inferences therefrom, which might reasonably support the perception that Bell posed a risk to the security of the officers." *Id*. at 500. These facts included Agent Snyder's knowledge that Cherry, the target of the arrest warrant, was suspected of being armed and dangerous because narcotics transactions often involve weapons. *Id*. Moreover, the agents were advised in advance of the execution of the warrant that Cherry had been seen with an accomplice. *Id*. at 501. The court thus noted that Bell's presence as a passenger, "while not itself justifying a frisk, was permissibly considered in analyzing whether there was reasonable cause to believe that Bell was potentially armed and dangerous." *Id*. For these and other reasons not relevant to the present case, the court concluded that, under the "totality of the circumstances test," the pat-down search of Bell did not violate the Fourth Amendment. *Id.* at 502.

Contrary to the government's argument, the facts in the present case are not analogous to the totality of the circumstances that existed in *Bell*. The driver of the vehicle in *Bell* was known to be potentially armed and dangerous because he was a drug dealer, and the very purpose of the stop was to arrest that driver. Moreover, the driver was known to have been traveling with an accomplice. This is a totally different fact pattern from that in the present case, where Jones and Wilson were pulled over simply because they were not wearing their seat belts, a minor traffic violation. Jones's spontaneous admission that he had served time on a federal gun charge does not suggest that "Jones was potentially armed." If anything, the admission at that point in the traffic stop suggests cooperation with authorities, not resistance. Had Jones intended to draw a gun on the officers, it is unlikely that he would have been so forthcoming about his prior conviction.

The government also asserts that the district court "entirely disregarded from the equation anything having to [do] with Jones." A reading of the court's order in its entirety, however, indicates the court's recognition that Wilson's proximity to Jones was relevant, but not dispositive, to the analysis. This is a correct interpretation of the law, because this court has held that the government must indeed show additional factors in order for the search to be constitutional. *See United States v. Robinson*, 149 F.3d 1185, 1998 WL 322656, at *3 (6th Cir. 1998) (holding that, although the government can rely on the fact that the defendant's traveling companion was found to be carrying a weapon "as *part* of the basis for establishing reasonable suspicion with regard to" the defendant, the government "must point to additional specific and articulable facts" in order to

satisfy *Terry*) (unpublished) (emphasis added).  To hold otherwise would in effect adopt the "automatic companion" rule that has already been rejected by this court.  *See Bell*, 762 F.2d at 498.

The government next argues that the district court failed to take into account that the officers in this case were dealing with two individuals who were in a car rather than on the street.  *Bell* is cited by the government for the proposition that "law enforcement officers are faced with a less substantial task in justifying the limited intrusion of a patdown when its subject is seated in a car, than when approaching an individual on the street or in some other circumstance." *Id*. at 500.  The government thus contends that the district court incorrectly applied the law by confining its reasoning "to a general *Terry* analysis."

*Bell*, however, does not relax the standard under *Terry* simply because the defendant is seated in a vehicle as opposed to walking down the street.  To be sure, the Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977).  That risk, however, stems in part from the "hazard of accidental injury from passing traffic," and not solely from the potential of assault on the officer by the person seated in the vehicle. *Id*. at 111.  This court in *Bell* was careful to note that "there is nothing about being seated in a car which is itself suspicious." *Bell*, 762 F.2d at 500 n.6.  In sum, the fact that a person is seated in a vehicle does not create a different test, but instead is simply a relevant consideration under the totality of the circumstances. *Id*. at 499.  It in no way changes the overarching constitutional analysis: "The fundamental inquiry in determining whether evidence is admissible is whether, in light of the 'totality of the circumstances' surrounding the seizure, it was reasonable for law enforcement personnel to proceed as they did." *Id*.

We are left with three specific and articulable facts offered by the government in support of the legality of the pat-down search of Wilson:  (1) the words and actions of Jones, the driver, (2) the fact that Wilson did not own the vehicle, and (3) Wilson's extreme nervousness.  The words and actions of Jones during the stop were undeniably suspicious and possibly indicative that Jones was involved in some sort of criminal activity.  This is not enough, however, to justify a pat-down search of Wilson, the sole justification for which was to protect the officers from an armed and dangerous suspect. *See Michigan v. Long*, 463 U.S. 1032, 1050 n.14 ("A *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime.") (quotation marks omitted).

Moreover, the fact that Wilson did not own the car does not support his pat-down.  Most passengers do not own the vehicle in which they are riding.  What is left, at bottom, is Wilson's "extreme nervousness" when the officers approached the car.  But Officer Moore testified that it was fairly common for people to be nervous when he pulled them over.  Nervous behavior, standing alone, is not enough to justify a *Terry* search. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995) ("Although there are a plethora of cases referring to a defendant appearing nervous, nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself.") (footnote omitted); *cf. United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (holding that a *Terry* search was justified "[b]ased upon the nervousness of all of the occupants, the marijuana stem in plain view, []attempts to conceal the marijuana stem and an unknown object, respectively").

In sum, the government can point to no specific and articulable facts to justify the pat-down of Wilson on the basis of a reasonable suspicion that he was armed and dangerous.  Nor did the district court incorrectly apply the law.  We thus find no error in granting the motion to suppress as to Wilson.  Although we do not relish the consequence that the possessor of a large quantity of drugs will escape punishment, our overriding concern is that the police must abide by the Fourth Amendment protections afforded to all of the inhabitants of this great country, guilty and innocent alike. *See Terry*, 392 U.S. at 13 (stating that "Courts which sit under our Constitution cannot and

will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of [unreasonable searches and seizures].").

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.