**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0097n.06

**No. 08-3120**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **FILED** |
| **Plaintiff-Appellee,** | : | **Feb 16, 2010** |
| | : | LEONARD GREEN, Clerk |
| v. | : | **ON APPEAL FROM THE UNITED** |
| | : | **STATES DISTRICT COURT FOR THE** |
| | : | **NORTHERN DISTRICT OF OHIO** |
| ARDELL D. NOBLE, | : | |
| | : | |
| **Defendant-Appellant.** | : | |

**Before: MOORE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.**[*]

**BERTELSMAN, District Judge.**

Defendant/Appellant, Ardell D. Noble, appeals from his conviction and sentence following his conditional guilty plea. Noble asserts that the district court erred in its rulings on his motion to suppress and in imposing his sentence. We **AFFIRM.**

**I. BACKGROUND**

On November 23, 2006, Thanksgiving Day, Cleveland Officers Budny and Kitko observed Noble sitting in the driver's seat of a vehicle under a no-stopping sign with the engine running. Officer Budny pulled the squad car behind Noble's vehicle, activating the squad lights and siren. Noble reacted by putting his hands in the air.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Both officers approached the vehicle, but only Officer Budny approached on the driver's side. Officer Budny obtained Noble's driver's license and returned to the squad car to run the routine checks.

While in the squad car, Officer Budny told Officer Kitko that he thought he smelled marijuana emanating from Noble's vehicle, but he was not certain because he was congested. The Officers returned to Noble's vehicle and, this time, Officer Kitko approached on the driver's side. Officer Kitko testified that he immediately smelled marijuana and asked Noble to step out of the vehicle. Once Noble was out of the vehicle, Officer Kitko asked him if he had any weapons. Noble did not respond, but asked why he was asked to get out of his vehicle. Officer Kitko explained that he smelled marijuana and again asked Noble if he had a weapon. Noble did not respond.

Officer Kitko proceeded to pat down Noble. During the pat down, Officer Kitko felt a bag in Noble's right pants pocket, which Noble confirmed was marijuana. Officer Kitko also felt objects in Noble's left pants pocket, which he believed to be cocaine and money. Officer Kitko lifted plaintiff's coat and saw a gun in Noble's waistband. Officer Kitko removed the weapon and placed Noble under arrest.

On December 20, 2006, the State of Ohio indicted Noble for carrying a concealed weapon, having a weapon while under a disability, trafficking offenses, drug possession and possessing criminal tools. Noble was also cited for illegal parking.

On January 9, 2007, the federal government filed a two-count indictment against Noble for felony possession of a firearm and possession of crack cocaine. On January 17, 2007, the State of Ohio dismissed the state charges.

On January 23, 2007, Agents Mullen and McBride, from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), went to Noble's apartment to interview him. Agent Mullen testified that, at the time of the interview, he knew that Noble had been charged in state court, that he had retained a lawyer for the state matter, and that a federal grand jury had returned an indictment against Noble. Noble asked the agents if he should have his attorney present. The agents told Noble that they could not give him legal advice, and they read him his Miranda rights and a waiver. Noble signed the waiver.

Agent Mullen testified that, during the interview, Noble admitted to the crimes charged, but he did not want to make a written or recorded statement without his attorney being present.

On February 2, 2007, Noble pled not guilty to the federal charges. On June 5, 2007, the district court held a hearing on Noble's motion to suppress the evidence obtained from the pat-down and from his interview with the ATF agents. The district court denied Noble's motion to suppress.

On June 12, 2007, the district court approved Noble's plea agreement in which he agreed to plead guilty to both counts, but reserved the right to appeal the court's denial of his motion to suppress and any sentence imposed above the Guidelines range.

On January 16, 2008, the district court entered its judgment in this matter, sentencing Noble to 120 months on each count, to be served concurrently.

## II.  ANALYSIS

On appeal, Noble challenges the district court's rulings on his motion to suppress and his sentence. As explained below, we find that the district court properly denied the motion to suppress and that the sentence is procedurally and substantively reasonable.

No. 08-3120, *United States v. Noble*

### A. The Motion to Suppress was Properly Denied.

#### 1. *Terry*[1] *Stop and Pat-Down*

When reviewing a district court's decision on a motion to suppress, we review its factual findings for clear error and its legal conclusions *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). When a district court has denied a motion to suppress, we review the evidence in the light most likely to support the district court's decision. *Id.*

Noble argues that the officers lacked probable cause to make the initial stop because it occurred on Thanksgiving Day, when parking regulations were not in effect. The district court correctly found, however, that the officers had probable cause to approach Noble's car because he was stopped under a no-stopping sign, during the relevant time period, and that the Cleveland Codified Ordinance exempts only parking regulations on holidays, not stopping regulations.[2] Cleveland Codified Ordinance § 403.03. Noble's contention that the traffic stop was pretextual is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Noble also contends that the seizure was unreasonable because the officers detained him longer than necessary to write the citation. We have previously held that to detain a motorist after a traffic stop longer than is reasonably necessary to issue the citation, "the officer must have

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] As we read the ordinance, "stopping" forbids even brief cessation of movement of a vehicle, and is used where such cessation might impede traffic. Thus, the fact that "no parking" regulations were not in effect on Thanksgiving Day does not mean that "stopping" regulations were also not in effect.

reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).

Here, the smell of marijuana emanating from Noble's vehicle constituted a change of circumstances that suggested Noble was engaged in illegal activity, which authorized further detention so the officers could investigate. *United States v. Ivey,* 307 F. App'x 941, 942 (6th Cir. 2009) (smell of alcohol provided requisite suspicion to justify continued detention under *Terry*); *United States v. Crumb,* 287 F. App'x 511, 524 (6th Cir. 2008) (citing cases holding that detection of odor of illegal substance provides probable cause); *United States v. Borne*, 239 F. App'x 185, 186-87 (6th Cir. 2007) (odor known to officer as that associated with methamphetamine sufficient basis to extend traffic stop and knowledge that drug dealers go armed justified search); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) (agent's detection of marijuana odor constituted probable cause to believe marijuana was in vehicle). Thus, the district court correctly concluded that the extended detention was not unreasonable.

Noble also argues that the pat down exceeded the constitutional parameters of *Terry v. Ohio*, 392 U.S. 1 (1968), because the officers did not have reason to believe he was armed and dangerous. The Supreme Court has recently explained *Terry*'s application to traffic stops:

> [W]e hold that, in a traffic-stop setting, the first *Terry* condition - a lawful investigatory stop - is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor *reasonable suspicion* that the person subject to the frisk is armed and dangerous.

*Arizona v. Johnson*, ___U.S. ___, 129 S. Ct. 781, 784 (2009) (emphasis added). A court's analysis of a *Terry* stop and pat down "must focus on the objective reasonableness of the police officer's actions." *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007) (citation omitted).

Although an officer does not have the authority to automatically perform a pat down of a person stopped for a vehicular violation, we have found, in comparable situations, that a pat down during a traffic stop is reasonable when additional facts are present which indicate that the person may be armed. *See United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008); *Borne*, 239 F. App'x at 186-87 (frisk supported by fact officer smelled methamphetamine and knew methamphetamine traffickers in area were likely to be armed).

Here, the officers testified that they patted down Noble for safety reasons because they smelled marijuana. Noble argues that the officers admitted that they did not have any information that he was armed and dangerous. *Terry* does not, however, require an officer to be certain that an individual is armed before he performs a protective frisk. Instead, officers conducting a routine traffic stop may perform a pat down of a driver upon *reasonable suspicion* that he *may* be armed and dangerous. *Johnson*, 129 S. Ct. at 787.

We find that the officers had a reasonable belief that Noble may be armed because of their suspicion that he was involved in illegal drug activity, which was supported by the odor of marijuana emanating from Noble's vehicle and Noble's lack of response when asked if he had a weapon, along with the officers' experience that persons engaged in drug activity are often armed. *Terry*, 392 U.S. at 27 (in determining if officer acted reasonably, due weight must be given to reasonable inference which he is entitled to draw from facts in light of his experience). *See also United States v. Garza*,

No. 08-3120, *United States v. Noble*

10 F.3d 1241, 1246 (6th Cir. 1993); *United States v. Thomas*, No. 97-4827, 1998 WL 852951, at *6 (4th Cir. 1998) (smell of marijuana, defendant's actions prior to approaching checkpoint, and officer's experience that weapons frequently accompany drugs, all provided justification for officer to conduct protective search).

### 2. *Statements Made to Agents*

Noble further argues that the district court erred in not suppressing the statements he made to the ATF agents because he had invoked his right to counsel on the state charges and, therefore, his exercise of that right also attached to the federal charges. Despite Noble's contention, the fact that he requested, and was appointed, counsel to defend him on the state charges did not invoke his Fifth Amendment rights, but only invoked his Sixth Amendment rights with respect to those charges. *See McNeil v. Wisconsin*, 501 U.S. 171, 177-78 (1991).

We also find that Noble's Sixth Amendment right to counsel on the state charges was extinguished by the state's dismissal of those charges. *See Cato-Riggs v. Yukins*, 46 F. App'x 821, 824 (6th Cir. 2002); *United States v. Montgomery*, 262 F.3d 233, 246-47 (4th Cir. 2001). *See also United States v. Toepfer*, 317 F. App'x 857, 861 (11th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1000 (2009); *United States v. Martinez*, 972 F.2d 1100, 1105 (9th Cir. 1992). Neither party contests that at the time of Noble's interview with the ATF agents, the state charges had already been dismissed and that Noble had not yet specifically invoked his Sixth Amendment right to counsel with regard to the federal charges. Thus, because Noble had no "active" Sixth Amendment right at the time of the interview, the Government could not have violated that right.

### B. The Sentence Is Procedurally and Substantively Reasonable.

Noble pled guilty to possession of a controlled substance and being a felon in possession of a firearm. The presentence report calculated Noble's advisory Guidelines range at 110 to 137 months, based on a total offense level of 25 and a criminal history category of six. The district court imposed a sentence of incarceration of 120 months on each count, to be served concurrently.

Noble argues that the district court erred in not adequately explaining the sentence and by arbitrarily picking a number of months of incarceration without adequate consideration of the required statutory factors contained in 18 U.S.C. § 3553(a).

We review a within-Guidelines sentence for reasonableness. *United States v. Walls,* 546 F.3d 728, 736 (6th Cir. 2008), *cert. denied*, ___ U.S. ___, 130 S. Ct. 516 (2009). In reviewing a sentence for reasonableness, we must consider both the procedural and substantive aspects of the district court's decision. *See Gall v. United States,* 552 U.S. 38, 51 (2007).

In reviewing a sentence for procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* We have held that a sentence is procedurally reasonable if (1) the district court correctly calculated the Guidelines range and used it as a starting point for its analysis; (2) the parties were given an opportunity to argue for the sentences they deemed appropriate; (3) the district court made an individualized sentencing decision based upon the facts and the § 3553(a) factors, and (4) the district court adequately explained the sentence imposed. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007).

Although Noble does not argue that the Guidelines range was improperly calculated, we have reviewed the presentence report, the objections thereto and the sentencing transcript, and confirm that the district court properly calculated the Guidelines range.

In addition, we have thoroughly reviewed the sentencing transcript and find that the district court adequately applied the facts to the § 3553(a) factors. First, the court explained the details of Noble's case and the conduct that lead to the charges. Second, the court detailed Noble's history and personal characteristics, both positive and negative, including family relationships and prior criminal history. Third, the court permitted both the government and Noble's counsel to discuss what they believed the appropriate sentence should be. Fourth, the court discussed that the Guidelines range of 110-137 months reflects the seriousness of the offense, provides some level of deterrence for others, and protects the public. Fifth, the court noted that it did not have any co-defendants to consider, but that the Guidelines range was consistent with sentences imposed on other defendants committing similar offenses with a comparable criminal history category. Lastly, the court explained the victim impact that Noble's crime has on society in general. Thus, the district court provided a thorough analysis of its individualized sentencing decision, and we find it did not commit procedural error in sentencing Noble.

Finding the sentence procedurally reasonable, we now "consider the substantive reasonableness of the sentence imposed under an abuse of discretion standard." *Gall*, 522 U.S. at 51. "A sentence is substantively unreasonable if the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Walls,* 546 F.3d at 736

(alterations in original) (internal quotation marks omitted) (citation omitted). If the sentence imposed is within the properly calculated Guidelines range, we apply a rebuttable presumption of reasonableness. *United States v. Vonner,* 516 F.3d 382, 389 (6th Cir.) (en banc), *cert. denied,* __ U.S.__, 129 S. Ct. 68 (2008).

Here, Noble argues that his sentence was substantively unreasonable because the court simply presumed a sentence within the Guidelines range would be reasonable and it did not articulate that it knew the Guidelines were not mandatory. However, as discussed above, the court articulated a detailed analysis of the facts of this case with respect to the § 3553(a) factors. The court also discussed the mandatory minimum sentence required on the firearm charge and the statutory penalties attributed to both counts. The district court concluded that the Guidelines range was consistent with similarly situated defendants and that a sentence at the bottom of the range was not appropriate for Noble. In addition, the defendant acknowledged in the plea agreement that he understood that the court must consider the advisory Sentencing Guidelines in determining a sentence.

Noble argues that the district court's sentencing comments are similar to those the Supreme Court found wanting in *Nelson v. United States*, __ U.S.__, 129 S. Ct. 890, 892 (2009). In *Nelson*, however, the district court specifically stated that a sentence imposed within the Guidelines range is presumptively reasonable. *Id*. at 891.

Here, the district court did not state that the sentence imposed was presumed reasonable simply because it was within the Guidelines range. Instead, the record supports a finding that the district court performed the pertinent analysis, did not give unreasonable weight to some factors over

others, and did not abuse its discretion in sentencing Noble.  Noble has not met his burden to rebut

the presumption of reasonableness afforded his within-Guidelines sentence on appeal.  Accordingly,

we find that the sentence imposed by the district court was not unreasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

No. 08-3120, *United States v. Noble*

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

Although I concur with the majority's determination that Officers Budny and Kitko had the authority to conduct a *Terry* stop and to question Noble further, I disagree with the conclusion that the officers were justified in conducting a protective patdown. The record is devoid of any specific articulable facts that would support the conclusion that the officers had a reasonable suspicion that Noble was armed and dangerous, as required by Supreme Court precedent. As a result, I believe that Noble's patdown violated the Fourth Amendment, and I would REVERSE the district court's denial of Noble's motion to suppress. It is for this reason that I must dissent.

The Supreme Court recently reaffirmed that "[t]o justify a patdown of the driver . . . during a traffic stop . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009). "Reasonable suspicion is based on the totality of the circumstances," and it requires "articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007) (internal quotation marks omitted); *see United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008). Officers are not required to "'be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" *Wilson*, 506 F.3d at 492 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

I believe that the record in the instant case cannot support the majority's conclusion that the officers had a reasonable suspicion that Noble was armed and dangerous. As an initial matter, the officers never testified that they conducted the patdown because they felt unsafe or believed Noble would be armed. Quite to the contrary, in fact, Officer Kitko explicitly testified that the patdown

was merely routine procedure, affirming several times that he possessed *no* information that Noble

was armed or dangerous prior to the frisk:

> Q: You had no information [Noble] was armed or dangerous, did you?
> A: I pat everybody down.
> Q: Pardon?
> A: I pat everybody down.
> Q: Even to give a parking ticket, you pat them down?
> A: Well, I smelled the odor of marijuana. The driver of the car . . . had a suspended driver's license, and I had no idea who he was, if he was armed and dangerous . . .

Doc. 55 (Suppression Hr'g Tr. at 36–37). Officer Budny similarly testified that the patdown was

"standard procedure" and not founded on particularized safety concerns:

> Q: And what did you see Officer Kitko do at that point, when he ordered him out of the vehicle?
> A: He asked him—standard procedure. We patted him down for weapons, you know, due to the fact that he had believed what he smelled was marijuana coming from the car, which would lead one to believe that there was marijuana in the car or on his person, so we patted him down for weapons, for our safety and his.

*Id.* at 20–21. Budny also confirmed that they "had no information that [Noble] was armed and

dangerous." *Id.* at 23.

Contrary to the majority's claim, at no point did the officers state that they conducted the

patdown based on their "experience that persons engaged in drug activity are often armed." Maj.

Op. at 8; *cf. United States v. Foster*, 376 F.3d 577, 587 (6th Cir. 2004) (holding that an officer was

justified in performing a patdown of a suspected PCP user where the officer "testified that in his

experience, people under the influence of PCP can become violent, and . . . he wanted to ensure that

[the defendant] was not armed"). And given the absence of such testimony, the majority's reliance

on the unpublished opinion, *United States v. Borne*, 239 F. App'x 185 (6th Cir. 2007), even

13

assuming it were binding authority, is unconvincing. Maj. Op. at 7. In *Borne*, it was not simply the suspicion of drug use that justified an officer's patdown of a defendant; rather, the panel held that the patdown was reasonable because the officer had (1) smelled methamphetamine, (2) recognized the defendant as someone who the officer "knew . . . had been arrested and convicted in the past for methamphetamine-related offenses," and (3) testified that "methamphetamine traffickers in that area *were known to go armed*." *Borne*, 239 F. App'x at 186–87 (emphasis added). Again, the instant case is distinguishable from *Borne* in that there is no testimony from the officers regarding the likelihood that someone who possesses or smells of marijuana is armed and dangerous based on their general experience, and both officers conceded that they had no prior information about Noble's tendency towards violence specifically.

A more accurate reading of the officers' testimony is that the officers believed that the *mere* suspicion that Noble was involved in drug activity was sufficient to establish a reasonable belief that he was armed and dangerous. Such a conclusion, however, runs completely contrary to Supreme Court and Sixth Circuit precedent. The Supreme Court has never fashioned an exception to the requirement that there be an individualized finding of dangerousness for cases involving drug investigations, and the Court very recently reaffirmed the continued need for an individualized determination of whether a person is armed and dangerous. *Johnson*, 129 S. Ct. at 784; *see also Wilson*, 506 F.3d at 492 (holding that reasonable suspicion requires a "particularized and objective basis").

Aside from the mere suspicion of drug-related activity, neither Officer Bundy nor Officer Kitko ever articulated any other specific facts sufficient to sustain the majority's conclusion that a

reasonably prudent person would have believed that his or her safety was in jeopardy. This is not surprising, however, as a review of the record indicates that there are none: (1) the stop occurred during daylight, the officers outnumbered Noble two to one, and there is no evidence that this was a high-crime area, *see* Doc. 55 (Suppression Hr'g Tr. at 33, 40); (2) upon being stopped, Noble raised his arms in the air, providing the officers with a complete view of his hands, *id.* at 34, and Noble never engaged in any furtive movements potentially indicative of weapons possession; (3) Officer Budny testified that Noble was neither evasive, overly nervous, nor otherwise acting strange and "respond[ed] to whatever command" was given and simply requested the presence of a police supervisor, *id.* at 23; (4) Noble also had no outstanding "wants or warrants," *id.* at 19; (5) he was the lawful and registered owner of the vehicle, *id.*; and (6) upon being asked to exit the vehicle, Noble was cooperative and immediately placed his hands on the hood of the car, as directed, *id.* at 28.

The majority highlights the fact that when Officer Kitko asked Noble if he had a weapon Noble did not respond. Maj. Op. at 8. This is not persuasive. First, there is nothing in the record indicating that the officers actually relied on Noble's silence in arriving at their belief that a patdown was required. *See United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("The court cannot determine that an officer had reasonable suspicion on the basis of a factor on which the officer did not actually rely."). Second, I do not believe that Noble's mere silence after being asked a potentially incriminating question by police is sufficient to support the majority's conclusion that the officers possessed an objectively reasonable suspicion that Noble was armed and dangerous. Noble was within his right to refuse to answer Officer Kitko's question. *See Terry*, 392 U.S. at 34 (White, J., concurring) ("Of course, the person stopped is not obligated to answer, answers may not be

compelled . . . ."); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("[T]he detainee is not obliged to respond."). Additionally, Noble's silence cannot be interpreted as being evasive. Noble made clear his general reticence to speak with the officers after they asked him to exit his vehicle by repeatedly requesting the presence of a police supervisor prior to any further interaction with the officers. In interpreting Noble's silence as a basis for reasonable suspicion, the majority fails to acknowledge Noble's requests for a supervisor and how Noble's desire for a police monitor may have impacted his responses. I simply cannot conclude that silence, even when coupled with the smell of marijuana, is sufficient to justify the conclusion that Noble was armed and dangerous under the facts of this case. *Cf. United States v. Richardson*, 310 F. App'x 1, 5 (6th Cir. 2008) (indicating that failure to respond was but one of numerous particularized and articulable facts sufficient to uphold a patdown); *United States v. Chaney*, 584 F.3d 20, 27–28 (1st Cir. 2009) (concluding that the defendant's "evasiveness and failure to identify" a visible bulge "in his pocket, coupled with the size and rigid nature of the object, gave Officer Brown a specific articulable basis for suspecting that [the defendant] might be armed, thereby justifying a pat-down search").

The specific facts upon which the officers actually based their conclusion that Noble might have been armed and dangerous, then, consisted of the following: they smelled the odor of marijuana coming from the car. This singular fact does not support a reasonable inference that a person is armed and dangerous, and, in so holding, the majority greatly expands the *Terry* doctrine by divorcing it from the "concern for officer safety," *Campbell*, 549 F.3d at 372, and allowing officers to use patdowns as a general investigatory tool. This is contrary to both Supreme Court and Sixth Circuit precedent, which has emphasized repeatedly and emphatically that the patdown

16

procedure is intended to protect officers' safety, and that officers must make the decision to engage in a patdown in light of these safety concerns. *See, e.g.*, *Knowles v. Iowa*, 525 U.S. 113, 117–18 (1998); *United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008) ("[A] pat-down search is for the limited purpose of ensuring the safety of the officer and others around him . . ." (internal quotation marks omitted)); *Campbell*, 549 F.3d at 372 ("[S]afety concerns are an integral factor in the *Terry*-stop equation.").

Given the majority's expansion of the *Terry* doctrine, its failure to support its conclusion with analogous binding precedent is not surprising. Although the majority claims that *United States v. Campbell* involves a "comparable situation[]," Maj. Op. at 7, *Campbell* is entirely distinguishable and is analogous to the instant case only because it involved a car and a *Terry* stop. In *Campbell*, a panel of this court found that the totality of the circumstances justified a patdown when the defendant was "slouched down in the passenger seat as if to avoid detection and [kept] his hands out of sight, suggestive of concealing a weapon." *Campbell*, 549 F.3d at 372. The vehicle in which the *Campbell* defendant sat was "'darked out'" and "parked in a secluded, high-crime area." *Id.* Moreover, the car's "license tags were not on file," thereby "raising suspicions that the car might be stolen," and the defendant had refused to provide identification to the officers after two separate requests. *Id.* In short, *Campbell* is a far cry from the instant case and does not support the conclusion that the facts here can sustain an objective belief that Noble was armed and dangerous, particularly given the officers' own admissions that they routinely conducted patdowns as part of their "standard procedure" and at no time believed Noble to be armed and dangerous.

No. 08-3120, *United States v. Noble*

A brief review of this Circuit's recent patdown-related cases further illustrates the majority's misapplication of *Terry*, as this Circuit has always required something more than the mere smell of marijuana to justify a patdown. *See, e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 835 (6th Cir. 2005) ("A reasonable belief that the suspect has contraband is not sufficient."); *Branch*, 537 F.3d at 589 (upholding a patdown where it occurred after the defendant gave consent to search his car and the officer found drugs and $10,000, because the officer "was entitled to rely on his training and experience that *drug dealers* frequently carry weapons" (emphasis added)); *United States v. Garcia*, 496 F.3d 495, 505 (6th Cir. 2007) (upholding a patdown where officers had "overheard [a vehicle's occupants] discussing kilos, *guns*, and large quantities of money[, and] . . . knew that the recently arrived occupants . . . claimed to work for a suspected *drug dealer*" (emphases added)); *Wilson*, 506 F.3d at 495–96 (holding a patdown was *un*reasonable when the only facts upon which the officers relied were that the non-defendant driver had admitted that he had served time on a federal gun charge, the defendant was not the owner of the vehicle in which he was stopped, and the defendant was extremely nervous); *see also United States v. Spinner*, 475 F.3d 356, 359 (D.C. Cir. 2007) (holding that nervousness and "fiddling with the center console" are not sufficient facts from which the officers could conclude that the defendant was armed and dangerous). Although officers "may shout 'officer safety' until blue-in-the-face, . . . the Fourth Amendment does not tolerate, nor has the Supreme Court or this Court ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained [is] armed and dangerous." *Bennett*, 410 F.3d at 841.

In sum, the majority's conclusion that the officers were authorized to conduct a patdown based on (1) their "experience that persons engaged in drug activity are often armed," (2) the "suspicion that [Noble] was involved in illegal drug activity" based on the smell of marijuana, and (3) Noble's "lack of response when asked if he had a weapon," Maj. Op. at 8, cannot justify the inference that Noble was armed and dangerous. As highlighted above, the record clearly contradicts the first fact upon which the majority relies, as the officers never so testified. Reliance on the second fact would eliminate completely the Supreme Court's requirement of individualized suspicion in drug-investigation cases, which the Supreme Court has recently reaffirmed is not the law. And, discounting the first two facts, the third fact, when coupled only with the smell of marijuana, is an insufficient basis upon which to assert a reasonable belief that a person is armed and dangerous, particularly when there is no evidence that the officers actually relied on Noble's silence. Based on the specific and articulable facts present here, a reasonably prudent officer would not have been warranted in believing that his or her safety was compromised, and any inference that Noble was armed and dangerous is unsupportable.

In conclusion, although I do not dispute that Officers Budny and Kitko were justified in stopping Noble for his Thanksgiving Day violation of the no-stopping ban and detaining him for further investigation, their subsequent patdown violated the Fourth Amendment as the officers presented no specific articulable facts indicating that Noble was armed and dangerous. I thus dissent from the majority's resolution of this claim and would REVERSE the district court's denial of the motion to suppress.