KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
Although I concur with the majority’s determination that Officers Budny and Kitko had the authority to conduct a Terry stop and to question Noble further, I disagree with the conclusion that the officers were justified in conducting a protective patdown. The record is devoid of any specific articulable facts that would support the conclusion that the officers had a reasonable suspicion that Noble was armed and dangerous, as required by Supreme Court precedent. As a result, I believe that Noble’s patdown violated the Fourth Amendment, and I would REVERSE the district court’s denial of Noble’s motion to suppress. It is for this reason that I must dissent.
The Supreme Court recently reaffirmed that “[t]o justify a patdown of the driver ... during a traffic stop ... the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.” Arizona v. Johnson, — U.S. -, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009). “Reasonable suspicion is based on the totality of the circumstances,” and it requires “articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity.” *968 United States v. Wilson, 506 F.3d 488, 492 (6th Cir.2007) (internal quotation marks omitted); see United States v. Campbell, 549 F.3d 364, 372 (6th Cir.2008). Officers are not required to “ ‘be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.’ ” Wilson, 506 F.3d at 492 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
I believe that the record in the instant case cannot support the majority’s conclusion that the officers had a reasonable suspicion that Noble was armed and dangerous. As an initial matter, the officers never testified that they conducted the patdown because they felt unsafe or believed Noble would be armed. Quite to the contrary, in fact, Officer Kitko explicitly testified that the patdown was merely routine procedure, affirming several times that he possessed no information that Noble was armed or dangerous prior to the frisk:
Q: You had no information [Noble] was armed or dangerous, did you?
A: I pat everybody down.
Q: Pardon?
A: I pat everybody down.
Q: Even to give a parking ticket, you pat them down?
A: Well, I smelled the odor of marijuana. The driver of the car ... had a suspended driver’s license, and I had no idea who he was, if he was armed and dangerous ...
Doc. 55 (Suppression Hr’g Tr. at 36-37). Officer Budny similarly testified that the patdown was “standard procedure” and not founded on particularized safety concerns:
Q: And what did you see Officer Iiitko do at that point, when he ordered him out of the vehicle?
A: He asked him — standard procedure. We patted him down for weapons, you know, due to the fact that he had believed what he smelled was marijuana coming from the car, which would lead one to believe that there was marijuana in the car or on his person, so we patted him down for weapons, for our safety and his.
Id. at 20-21. Budny also confirmed that they “had no information that [Noble] was armed and dangerous.” Id. at 23.
Contrary to the majority’s claim, at no point did the officers state that they conducted the patdown based on them “experience that persons engaged in drug activity are often armed.” Maj. Op. at 965; cf. United States v. Foster, 376 F.3d 577, 587 (6th Cir.2004) (holding that an officer was justified in performing a patdown of a suspected PCP user where the officer “testified that in his experience, people under the influence of PCP can become violent, and ... he wanted to ensure that [the defendant] was not armed”). And given the absence of such testimony, the majority’s reliance on the unpublished opinion, United States v. Borne, 239 Fed.Appx. 185 (6th Cir.2007), even assuming it were binding authority, is unconvincing. Maj. Op. at 965. In Borne, it was not simply the suspicion of drug use that justified an officer’s patdown of a defendant; rather, the panel held that the patdown was reasonable because the officer had (1) smelled methamphetamine, (2) recognized the defendant as someone who the officer “knew ... had been arrested and convicted in the past for methamphetamine-related offenses,” and (3) testified that “methamphetamine traffickers in that area were known to go armed.” Borne, 239 Fed.Appx. at 186-87 (emphasis added). Again, the instant case is distinguishable from Borne in that there is no testimony from the officers regarding the likelihood that someone who possesses *969 or smells of marijuana is armed and dangerous based on their general experience, and both officers conceded that they had no prior information about Noble’s tendency towards violence specifically.
A more accurate reading of the officers’ testimony is that the officers believed that the mere suspicion that Noble was involved in drug activity was sufficient to establish a reasonable belief that he was armed and dangerous. Such a conclusion, however, runs completely contrary to Supreme Court and Sixth Circuit precedent. The Supreme Court has never fashioned an exception to the requirement that there be an individualized finding of dangerousness for cases involving di'ug investigations, and the Court very recently reaffirmed the continued need for an individualized determination of whether a person is armed and dangerous. Johnson, 129 S.Ct. at 784; see also Wilson, 506 F.3d at 492 (holding that reasonable suspicion requires a “particularized and objective basis”).
Aside from the mere suspicion of drug-related activity, neither Officer Budny nor Officer Kitko ever articulated any other specific facts sufficient to sustain the majority’s conclusion that a reasonably prudent person would have believed that his or her safety was in jeopardy. This is not surprising, however, as a review of the record indicates that there are none: (1) the stop occurred during daylight, the officers outnumbered Noble two to one, and there is no evidence that this was a high-crime area, see Doc. 55 (Suppression Hr’g Tr. at 33, 40); (2) upon being stopped, Noble raised his arms in the air, providing the officers with a complete view of his hands, id. at 34, and Noble never engaged in any furtive movements potentially indicative of weapons possession; (3) Officer Budny testified that Noble was neither evasive, overly nervous, nor otherwise acting strange and “respond[ed] to whatever command” was given and simply requested the presence of a police supervisor, id. at 23; (4) Noble also had no outstanding “wants or warrants,” id. at 19; (5) he was the lawful and registered owner of the vehicle, id.; and (6) upon being asked to exit the vehicle, Noble was cooperative and immediately placed his hands on the hood of the car, as directed, id. at 28.
The majority highlights the fact that when Officer Kitko asked Noble if he had a weapon Noble did not respond. Maj. Op. at 966. This is not persuasive. First, there is nothing in the record indicating that the officers actually relied on Noble’s silence in arriving at their belief that a patdown was required. See United States v. Townsend, 305 F.3d 537, 541 (6th Cir.2002) (“The court cannot determine that an officer had reasonable suspicion on the basis of a factor on which the officer did not actually rely.”). Second, I do not believe that Noble’s mere silence after being asked a potentially incriminating question by police is sufficient to support the majority’s conclusion that the officers possessed an objectively reasonable suspicion that Noble was armed and dangerous. Noble was within his right to refuse to answer Officer Kitko’s question. See Terry, 392 U.S. at 34, 88 S.Ct. 1868 (White, J., concurring) (“Of course, the person stopped is not obligated to answer, answers may not be compelled.... ”); Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (“[T]he detainee is not obliged to respond.”). Additionally, Noble’s silence cannot be interpreted as being-evasive. Noble made clear his general reticence to speak with the officers after they asked him to exit his vehicle by repeatedly requesting the presence of a police supervisor prior to any further interaction with the officers. In interpreting Noble’s silence as a basis for reasonable suspicion, the majority fails to acknowl *970 edge Noble’s requests for a supervisor and how Noble’s desire for a police monitor may have impacted his responses. I simply cannot conclude that silence, even when coupled with the smell of marijuana, is sufficient to justify the conclusion that Noble was armed and dangerous under the facts of this case. Cf. United States v. Richardson, 310 Fed.Appx. 1, 5 (6th Cir.2008) (indicating that failure to respond was but one of numerous particularized and articulable facts sufficient to uphold a patdown); United States v. Chaney, 584 F.3d 20, 27 (1st Cir.2009) (concluding that the defendant’s “evasiveness and failure to identify” a visible bulge “in his pocket, coupled with the size and rigid nature of the object, gave Officer Brown a specific articulable basis for suspecting that [the defendant] might be armed, thereby justifying a pat-down search”).
The specific facts upon which the officers actually based their conclusion that Noble might have been armed and dangerous, then, consisted of the following: they smelled the odor of marijuana coming from the car. This singular fact does not support a reasonable inference that a person is armed and dangerous, and, in so holding, the majority greatly expands the Terry doctrine by divorcing it from the “concern for officer safety,” Campbell, 549 F.3d at 372, and allowing officers to use pat-downs as a general investigatory tool. This is contrary to both Supreme Court and Sixth Circuit precedent, which has emphasized repeatedly and emphatically that the patdown procedure is intended to protect officers’ safety, and that officers must make the decision to engage in a patdown in light of these safety concerns. See, e.g., Knowles v. Iowa, 525 U.S. 113, 117-18, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); United States v. Branch, 537 F.3d 582, 589 (6th Cir.2008) (“[A] pat-down search is for the limited purpose of ensuring the safety of the officer and others around him ...” (internal quotation marks omitted)); Campbell, 549 F.3d at 372 (“[S]afety concerns are an integral factor in the Terry-stop equation.”).
Given the majority’s expansion of the Teny doctrine, its failure to support its conclusion with analogous binding precedent is not surprising. Although the majority claims that United States v. Campbell involves a “comparable situation[ ],” Maj. Op. at 965, Campbell is entirely distinguishable and is analogous to the instant case only because it involved a car and a Terry stop. In Campbell, a panel of this court found that the totality of the circumstances justified a patdown when the defendant was “slouched down in the passenger seat as if to avoid detection and [kept] his hands out of sight, suggestive of concealing a weapon.” Campbell, 549 F.3d at 372. The vehicle in which the Campbell defendant sat was “ ‘darked out’ ” and “parked in a secluded, high-crime area.” Id. Moreover, the car’s “license tags were not on file,” thereby “raising suspicions that the car might be stolen,” and the defendant had refused to provide identification to the officers after two separate requests. Id. In short, Campbell is a far cry from the instant case and does not support the conclusion that the facts here can sustain an objective belief that Noble was armed and dangerous, particularly given the officers’ own admissions that they routinely conducted patdowns as part of their “standard procedure” and at no time believed Noble to be armed and dangerous.
A brief review of this Circuit’s recent patdown-related cases further illustrates the majority’s misapplication of Terry, as this Circuit has always required something more than the mere smell of marijuana to justify a patdown. See, e.g., Bennett v. City of Eastpointe, 410 F.3d 810, 835 (6th Cir.2005) (“A reasonable belief that the suspect has contraband is not sufficient.”); *971 Branch, 537 F.3d at 589 (upholding a pat-down where it occurred after the defendant gave consent to search his ear and the officer found drugs and $10,000, because the officer “was entitled to rely on his training and experience that drug dealers frequently carry weapons” (emphasis added)); United States v. Garcia, 496 F.3d 495, 505 (6th Cir.2007) (upholding a pat-down where officers had “overheard [a vehicle’s occupants] discussing kilos, guns, and large quantities of money[, and] ... knew that the recently arrived occupants ... claimed to work for a suspected drug dealer” (emphases added)); Wilson, 506 F.3d at 495-96 (holding a patdown was unreasonable when the only facts upon which the officers relied were that the non-defendant driver had admitted that he had served time on a federal gun charge, the defendant was not the owner of the vehicle in which he was stopped, and the defendant was extremely nervous); see also United States v. Spinner, 475 F.3d 356, 359 (D.C.Cir.2007) (holding that nervousness and “fiddling with the center console” are not sufficient facts from which the officers could conclude that the defendant was armed and dangerous). Although officers “may shout ‘officer safet/ until blue-in-the-face, ... the Fourth Amendment does not tolerate, nor has the Supreme Court or this Court ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained [is] armed and dangerous.” Bennett, 410 F.3d at 841.
In sum, the majority’s conclusion that the officers were authorized to conduct a patdown based on (1) their “experience that persons engaged in drug activity are often armed,” (2) the “suspicion that [Noble] was involved in illegal drug activity” based on the smell of marijuana, and (3) Noble’s “lack of response when asked if he had a weapon,” Maj. Op. at 965, cannot justify the inference that Noble was armed and dangerous. As highlighted above, the record clearly contradicts the first fact upon which the majority relies, as the officers never so testified. Reliance on the second fact would eliminate completely the Supreme Court’s requirement of individualized suspicion in drug-investigation cases, which the Supreme Court has recently reaffirmed is not the law. And, discounting the first two facts, the third fact, when coupled only with the smell of marijuana, is an insufficient basis upon which to assert a reasonable belief that a person is armed and dangerous, particularly when there is no evidence that the officers actually relied on Noble’s silence. Based on the specific and articulable facts present here, a reasonably prudent officer would not have been warranted in believing that his or her safety was compromised, and any inference that Noble was armed and dangerous is unsupportable.
In conclusion, although I do not dispute that Officers Budny and Kitko were justified in stopping Noble for his Thanksgiving Day violation of the no-stopping ban and detaining him for further investigation, them subsequent patdown violated the Fourth Amendment as the officers presented no specific articulable facts indicating that Noble was armed and dangerous. I thus dissent from the majority’s resolution of this claim and would REVERSE the district court’s denial of the motion to suppress.